## BELL v. BURSON, DIRECTOR, GEORGIA DEPARTMENT OF PUBLIC SAFETY

No. 5586.  Argued March 23, 1971—Decided May 24, 1971

BRENNAN, J., delivered the opinion of the Court, in which DOUGLAS, HARLAN, STEWART, WHITE, and MARSHALL, JJ., joined. BURGER, C. J., and BLACK and BLACKMUN, JJ., concurred in the result.

*Elizabeth Roediger Rindskopf* argued the cause for petitioner *pro hac vice.* With her on the brief was *Howard Moore, Jr.*

*Dorothy T. Beasley,* Assistant Attorney General of Georgia, argued the cause for respondent. With her on the brief were *Arthur K. Bolton,* Attorney General, *Harold N. Hill, Jr.,* Executive Assistant Attorney General, and *Courtney Wilder Stanton,* Assistant Attorney General.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Georgia's Motor Vehicle Safety Responsibility Act provides that the motor vehicle registration and driver's

license of an uninsured motorist involved in an accident shall be suspended unless he posts security to cover the amount of damages claimed by aggrieved parties in reports of the accident.[1] The administrative hearing conducted prior to the suspension excludes consideration of the motorist's fault or liability for the accident. The Georgia Court of Appeals rejected petitioner's contention that the State's statutory scheme, in failing before suspending the licenses to afford him a hearing on the question of his fault or liability, denied him due process in violation of the Fourteenth Amendment: the court

---

[1] Motor Vehicle Safety Responsibility Act, Ga. Code Ann. § 92A–601 *et seq.* (1958). In pertinent part the Act provides that anyone involved in an accident must submit a report to the Director of Public Safety. Ga. Code Ann. § 92A–604 (Supp. 1970). Within 30 days of the receipt of the report the Director "shall suspend the license and all registration certificates and all registration plates of the operator and owner of any motor vehicle in any manner involved in the accident unless or until the operator or owner has previously furnished or immediately furnishes security, sufficient . . . to satisfy any judgments for damages or injuries resulting . . . and unless such operator or owner shall give proof of financial responsibility for the future as is required in section 92A–615.1. . . ." Ga. Code Ann. § 92A–605 (a) (Supp. 1970). Section 92A–615.1 (Supp. 1970) requires that "such proof must be maintained for a one-year period." Section 92A–605 (a) works no suspension, however, (1) if the owner or operator had in effect at the time of the accident a liability insurance policy or other bond, Ga. Code Ann. § 92A–605 (c) (Supp. 1970); (2) if the owner or operator qualifies as a self-insurer, *ibid.;* (3) if only the owner or operator was injured, Ga. Code Ann. § 92A–606 (1958); (4) if the automobile was legally parked at the time of the accident, *ibid.;* (5) if as to an owner, the automobile was being operated without permission, *ibid.;* or (6) "[i]f, prior to the date that the Director would otherwise suspend license and registration . . . there shall be filed with the Director evidence satisfactory to him that the person who would otherwise have to file security has been released from liability or been finally adjudicated not to be liable or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments . . . ." *Ibid.*

held that " 'Fault' or 'innocence' are completely irrelevant factors." 121 Ga. App. 418, 420, 174 S. E. 2d 235, 236 (1970). The Georgia Supreme Court denied review. App. 27. We granted certiorari. 400 U. S. 963 (1970). We reverse.

Petitioner is a clergyman whose ministry requires him to travel by car to cover three rural Georgia communities. On Sunday afternoon, November 24, 1968, petitioner was involved in an accident when five-year-old Sherry Capes rode her bicycle into the side of his automobile. The child's parents filed an accident report with the Director of the Georgia Department of Public Safety indicating that their daughter had suffered substantial injuries for which they claimed damages of $5,000. Petitioner was thereafter informed by the Director that unless he was covered by a liability insurance policy in effect at the time of the accident he must file a bond or cash security deposit of $5,000 or present a notarized release from liability, plus proof of future financial responsibility,[2] or suffer the suspension of his driver's license and vehicle registration. App. 9. Petitioner requested an administrative hearing before the Director asserting that he was not liable as the accident was unavoidable, and stating also that he would be severely handicapped in the performance of his ministerial duties by a suspension of his licenses. A hearing was scheduled but the Director informed petitioner that "[t]he only evidence that the Department can accept and consider is: (a) was the petitioner or his vehicle involved in the accident; (b) has petitioner complied with the provisions of the Law as provided; or (c) does petitioner come within

---

[2] Questions concerning the requirement of proof of future financial responsibility are not before us. The State's brief, at 4, states: "The one year period for proof of financial responsibility has now expired, so [petitioner] would not be required to file such proof, even if the Court of Appeals decision were affirmed."

any of the exceptions of the Law." App. 11.[3]  At the administrative hearing the Director rejected petitioner's proffer of evidence on liability, ascertained that petitioner was not within any of the statutory exceptions, and gave petitioner 30 days to comply with the security requirements or suffer suspension.  Petitioner then exercised his statutory right to an appeal *de novo* in the Superior Court.  Ga. Code Ann. § 92A–602 (1958).  At that hearing, the court permitted petitioner to present his evidence on liability, and, although the claimants were neither parties nor witnesses, found petitioner free from fault. As a result, the Superior Court ordered "that the petitioner's driver's license not be suspended . . . [until] suit is filed against petitioner for the purpose of recovering damages for the injuries sustained by the child . . . ." App. 15.  This order was reversed by the Georgia Court of Appeals in overruling petitioner's constitutional contention.

---

[3] Ga. Code Ann. § 92A–602 (1958) provides:

"The Director shall administer and enforce the provisions of this Chapter and may make rules and regulations necessary for its administration and shall provide for hearings upon request of persons aggrieved by orders or acts of the Director under the provisions of this Chapter.  Such hearing need not be a matter of record and the decision as rendered by the Director shall be final unless the aggrieved person shall desire an appeal, in which case he shall have the right to enter an appeal to the superior court of the county of his residence, by notice to the Director, in the same manner as appeals are entered from the court of ordinary, except that the appellant shall not be required to post any bond nor pay the costs in advance. If the aggrieved person desires, the appeal may be heard by the judge at term or in chambers or before a jury at the first term. The hearing on the appeal shall be de novo, however, such appeal shall not act as a supersedeas of any orders or acts of the Director, nor shall the appellant be allowed to operate or permit a motor vehicle to be operated in violation of any suspension or revocation by the Director, while such appeal is pending.  A notice sent by registered mail shall be sufficient service on the Director that such appeal has been entered."

If the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment. *Ex parte Poresky,* 290 U. S. 30 (1933); *Continental Baking Co.* v. *Woodring,* 286 U. S. 352 (1932); *Hess* v. *Pawloski,* 274 U. S. 352 (1927). It does not follow, however, that the amendment also permits the Georgia statutory scheme where not all motorists, but rather only motorists involved in accidents, are required to post security under penalty of loss of the licenses. See *Shapiro* v. *Thompson,* 394 U. S. 618 (1969); *Frost & Frost Trucking Co.* v. *Railroad Comm'n,* 271 U. S. 583 (1926). Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337 (1969); *Goldberg* v. *Kelly,* 397 U. S. 254 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege." *Sherbert* v. *Verner,* 374 U. S. 398 (1963) (disqualification for unemployment compensation); *Slochower* v. *Board of Education,* 350 U. S. 551 (1956) (discharge from public employment); *Speiser* v. *Randall,* 357 U. S. 513 (1958) (denial of a tax exemption); *Goldberg* v. *Kelly, supra* (withdrawal of welfare benefits). See also *Londoner* v. *Denver,* 210 U. S. 373, 385–386 (1908); *Goldsmith* v. *Board of Tax Appeals,* 270 U. S. 117 (1926); *Opp Cotton Mills* v. *Administrator,* 312 U. S. 126 (1941).

We turn then to the nature of the procedural due process which must be afforded the licensee on the ques-

tion of his fault or liability for the accident.[4] A procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case. Thus, procedures adequate to determine a welfare claim may not suffice to try a felony charge. Compare *Goldberg* v. *Kelly*, 397 U. S., at 270–271, with *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). Clearly, however, the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liability. That adjudication can only be made in litigation between the parties involved in the accident. Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee.

The State argues that the licensee's interest in avoiding the suspension of his licenses is outweighed by countervailing governmental interests and therefore that this procedural due process need not be afforded him. We disagree. In cases where there is no reasonable possibility of a judgment being rendered against a licensee, Georgia's interest in protecting a claimant from the possibility of an unrecoverable judgment is not, within the context of the State's fault-oriented scheme, a justification for denying the process due its citizens. Nor is additional expense occasioned by the expanded hearing sufficient to withstand the constitutional requirement. " 'While the problem of additional expense must be kept

---

[4] Petitioner stated at oral argument that while "it would be possible to raise [an equal protection argument] . . . we don't raise this point here." Tr. of Oral Arg. 14.

in mind, it does not justify denying a hearing meeting the ordinary standards of due process.'" *Goldberg* v. *Kelly,* 397 U. S., at 261, quoting *Kelly* v. *Wyman,* 294 F. Supp. 893, 901 (SDNY 1968).

The main thrust of Georgia's argument is that it need not provide a hearing on liability because fault and liability are irrelevant to the statutory scheme. We may assume that were this so, the prior administrative hearing presently provided by the State would be "appropriate to the nature of the case." *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U. S. 306, 313 (1950). But "[i]n reviewing state action in this area . . . we look to substance, not to bare form, to determine whether constitutional minimums have been honored." *Willner* v. *Committee on Character,* 373 U. S. 96, 106–107 (1963) (concurring opinion). And looking to the operation of the State's statutory scheme, it is clear that liability, in the sense of an ultimate judicial determination of responsibility, plays a crucial role in the Safety Responsibility Act. If prior to suspension there is a release from liability executed by the injured party, no suspension is worked by the Act. Ga. Code Ann. § 92A–606 (1958). The same is true if prior to suspension there is an adjudication of nonliability. *Ibid.* Even after suspension has been declared, a release from liability or an adjudication of nonliability will lift the suspension. Ga. Code Ann. § 92A–607 (Supp. 1970). Moreover, other of the Act's exceptions are developed around liability-related concepts. Thus, we are not dealing here with a no-fault scheme. Since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing.

The hearing required by the Due Process Clause must be "meaningful," *Armstrong* v. *Manzo,* 380 U. S. 545,

552 (1965), and "appropriate to the nature of the case." *Mullane* v. *Central Hanover Bank & Trust Co., supra,* at 313. It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision whether licenses of the nature here involved shall be suspended does not meet this standard.

Finally, we reject Georgia's argument that if it must afford the licensee an inquiry into the question of liability, that determination, unlike the determination of the matters presently considered at the administrative hearing, need not be made prior to the suspension of the licenses. While "[m]any controversies have raged about . . . the Due Process Clause," *ibid.,* it is fundamental that except in emergency situations (and this is not one) [5] due process requires that when a State seeks to terminate an interest such as that here involved, it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective. *Ibid. Opp Cotton Mills* v. *Administrator,* 312 U. S., at 152–156; *Sniadach* v. *Family Finance Corp., supra; Goldberg* v. *Kelly, supra; Wisconsin* v. *Constantineau,* 400 U. S. 433 (1971).

We hold, then, that under Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident. We deem it inappropriate in this case to do more than lay down this requirement. The alternative methods of compliance are several. Georgia may decide merely to include consideration of the question at the administrative

---

[5] See, *e. g., Fahey* v. *Mallonee,* 332 U. S. 245 (1947); *Ewing* v. *Mytinger & Casselberry,* 339 U. S. 594 (1950).

hearing now provided, or it may elect to postpone such a consideration to the *de novo* judicial proceedings in the Superior Court. Georgia may decide to withhold suspension until adjudication of an action for damages brought by the injured party. Indeed, Georgia may elect to abandon its present scheme completely and pursue one of the various alternatives in force in other States.[6] Finally, Georgia may reject all of the above and devise an entirely new regulatory scheme. The area of choice is wide: we hold only that the failure of the present Georgia scheme to afford the petitioner a prior hearing on liability of the nature we have defined denied him procedural due process in violation of the Fourteenth Amendment.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE BLACKMUN concur in the result.

---

[6] The various alternatives include compulsory insurance plans, public or joint public-private unsatisfied judgment funds, and assigned claims plans. See R. Keeton & J. O'Connell, After Cars Crash (1967).