## Commonwealth *v.* Roeting, Jr.

Argued May 5, 1972, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three. Reargued December 6, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Stuart A. Liner,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellant.

*Henry F. Gingrich,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., January 16, 1973:
The Commonwealth of Pennsylvania is here appealing an order of the Court of Common Pleas of Lancaster County which reversed the suspension by the Secretary of Transportation of the operator's license of Francis Roeting, Jr., appellee. Appellee, in October 1966, was involved in an accident with an insured of the Harleysville Mutual Insurance Company of Lancaster. As a result, he executed a judgment note for Harleysville Mutual Insurance Company which contained a confession of judgment clause. The insurance company filed the judgment note in the office of the Prothonotary of Lancaster County, January 8, 1971. Certification of the judgment was forwarded to the Secretary of

Transportation in April 1971, and on June 21, 1971, the Secretary suspended the operating license of appellee under the mandate of Section 1413 of the Vehicle Code (non-payment of a judgment).

An appeal was taken by Roeting to the Court of Common Pleas of Lancaster County.[1] The court below reversed the Secretary and held Section 1413 unconstitutional in that it violated Roeting's rights of equal protection and due process under the 14th Amendment of the United States Constitution by suspending his license without a determination that the judgment was the result of appellee's negligent driving. We affirm.

There is no doubt that the Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §1413, mandates the action of the Secretary in suspending the appellee's license upon certification that a judgment was rendered against appellee. The question herein is whether this Pennsylvania Financial Responsibility Statute is constitutional as it is applied to appellee.

The United States Supreme Court has twice upheld the constitutionality of state financial responsibility statutes. *Kesler v. Department of Public Safety of the State of Utah,* 369 U.S. 153 (1962); *Reitz v. Mealey,* 314 U.S. 33 (1941). The Supreme Court has stated that such statutes, promulgated under the police power of the states, are not devious means of using the police power as a collecting agency for private debts, but, instead, are "intended to discourage careless driving or to mitigate its consequences by requiring as a condition of licensing the satisfaction of outstanding judgments, the posting of security to cover possible liability for a

---

[1] In the court below, the Commonwealth raised the issue of whether Roeting could appeal his suspension even though Section 1413 does not provide for appeal. The court below allowed the appeal to be taken. That position is consistent with this Court's reasoning in *Department of Transportation v. Hosek,* 3 Pa. Commonwealth Ct. 580, 284 A. 2d 524 (1972).

past accident, or the filing of an insurance policy or other proof of ability to respond in damages in the future." *Kesler*, 369 U.S. at 158. These statutes are a use of the police power to protect against damage inflicted on the public by those "adjudged guilty of negligence driving." *Reitz*, 314 U.S. at 36.

Essentially, the Supreme Court has held such statutes to be valid exercises of the police power for two purposes: (1) to remove from the highways previously negligent drivers who are unable to demonstrate the ability to compensate for future damages they might cause; (2) to punish drivers who through negligence cause injury but who escape liability by their inability to pay.[2] Section 1413 of the Pennsylvania Vehicle Code does not provide for reinstatement of licenses upon proof of financial responsibility for future accidents.[3] It therefore must be based upon the purpose of punishing negligent drivers.

We base this conclusion, in part, upon our agreement with the view expressed in *Miller v. Depuy*, 307 F. Supp. 166, 170 (E.D. Pa. 1969).[4] There, Judge

---

[2] It should be noted that in *Kesler* and *Reitz* the Supreme Court appeared to discard the motive of aiding in the collection of private debts as a valid reason for use of the police power. See also, *Miller v. Depuy*, 307 F. Supp. 166 (E.D. Pa. 1969), affirmed on other grounds, *Miller v. Anckaitis*, 436 F. 2d 115 (3d Cir. 1970).

[3] Section 1413(b) provides that the Secretary may in his discretion lift the suspension if the judgment creditor consents in writing, and provided the debtor furnishes proof of financial responsibility. Clearly, this provision for proof of financial responsibility in this section is to protect the creditor, not to provide for the safety and welfare of future accident victims. *See, Kesler v. Department of Public Safety of the State of Utah*, 369 U.S. 153 (1962).

[4] In *Miller*, Judge BODY, of the Federal District Court, held that Sections 1413 and 1414 violated the 14th Amendment constitutional rights of one vicariously liable for an accident in that the existence of negligent driving by the licensee was not considered

BODY, referring to Sections 1413 and 1414 of the Vehicle Code, stated, "The state's exercise of the police power to promote safety on the highway can in no direct and compelling way be served by suspending a person's ownership certificate and operator's license where in fact he has not been shown to be in any way an unsafe *driver.*" (Emphasis in original.) Since the use of the police power here involved is only served when directed at negligent drivers, it is clear that Section 1413 must have as its purpose, if it is to have any valid purpose, the removal from the highway of negligent drivers who have caused injury with impunity.

Where a statute is grounded upon a theory of fault or liability for negligent driving, its provisions must be drawn so as to provide reasonable ascertainment of whether those it seeks to punish *are* negligent drivers. Otherwise, it violates the constitutional right to due process. *Bell v. Burson,* 402 U.S. 535 (1971).[5] Therefore, the question before this Court is whether certifica-

---

by the Secretary. The Third Circuit upheld the reinstatement of the license, but only on Supremacy Clause grounds relating to bankruptcy. *Miller v. Anckaitis,* 436 F. 2d 115 (3d Cir. 1970). As to the 14th Amendment grounds, the Third Circuit held that a three-judge panel was necessary to pass on such constitutional issues, and therefore, Judy BODY, by himself, should not have entertained them. Since the Third Circuit did not express a contrary viewpoint on the merits, we may still accord Judge BODY's opinion the credence which its reasoning compels.

[5] *Bell v. Burson,* 402 U.S. 535 (1971), involved an uninsured Georgia motorist whose license was suspended under that state's statute requiring uninsured motorists to provide security in the amount of all claims against them resulting from an auto accident, or suffer summary suspension of their license. The Supreme Court held that because the statute was based on liability for damages, the suspension must be preceded by a hearing to determine whether there was a reasonable possibility that the licensee was liable for the claims. In the instant case, the liability exists. The question is then whether there is a reasonable possibility that the liability arose from negligent or unsafe driving.

tion of a judgment resulting from a traffic accident, where that judgment was obtained by a confession of judgment clause in a judgment note, is sufficient evidence of negligent driving by the judgment debtor so as to permit the application of Section 1413.

The Commonwealth argues that a licensee would not execute a judgment note, except to avoid being sued for damages caused by his negligence. Thus, it argues, the judgment debtor has confessed his guilt. The Commonwealth draws a single exclusive inference from the execution of a judgment note. We find it reasonable indeed more likely to infer that a licensee might be motivated to sign such a note (1) by his mistaken belief that he was liable; (2) by his desire to avoid costly litigation; (3) by confusion caused by pressure from other parties and their corporate allies; or (4) merely by a feeling of moral obligation. More importantly, if a licensee who is vicariously liable for damages resulting from an automobile accident, executed a judgment note, and had judgment confessed against him, Section 1413 would mandate the suspension of his license even though the judgment did not result from his operation, negligent or otherwise, of a vehicle. *Miller v. Depuy,* 307 F. Supp. 173 (E.D. Pa. 1969).

We believe the Legislature, consistent with the purpose of this statute, envisioned a judgment under Section 1413 to be an adjudication of liability for negligent or careless driving. Where, as here, Section 1413 is invoked by determining fault or liability for negligent driving by confessed judgment, the constitutional right to due process is violated. "Since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor. . . ." *Bell,* 402 U.S. at 541. The Secretary, under Section 1413 acts upon only the certification of judgment. This pro-

cedure does not permit him to determine the degree of fault, if any, upon which that judgment was based. Without such a determination, the suspension must fall.[6]

Affirmed.

---

[6] We do not share the fear of the Commonwealth that negligent drivers will be able to avoid the intent of Section 1413 by signing judgment notes, with confession of judgment clauses. We have not granted these drivers immunity from provisions such as Section 1413. We have held merely that the constitution requires the Secretary to have before him sufficient evidence relating to the accident to determine that there is a reasonable possibility that the debtor was liable because of his negligent driving.