Frank W. LEONHART, Jr., and Billie
O. Sanner, Plaintiffs,

v.

Francis McCORMICK, individually and as
Chief of the Financial Responsibility
Division, Bureau of Traffic Safety of
the Pennsylvania Department of Trans-
portation et al., Defendants.

Civ. A. No. 75–28, Erie.

United States District Court,
W. D. Pennsylvania.

June 27, 1975.

James E. Bukac, and Charles A. Bierbach, Legal Services for Northwestern Pennsylvania, Meadville, Pa., for plaintiffs.

James T. Marnen, Asst. Atty. Gen., Erie, Pa., John L. Heaton, Legal Dept., Pennsylvania Dept. of Transp., Harrisburg, Pa., for defendants.

## OPINION

WEBER, District Judge.

Plaintiffs seek a head-on collision between the provisions of the Pennsylvania Motor Vehicle Code, Article XIV, Motor Vehicle Safety Responsibility Provisions, Act of 1959, April 29, P.L. 58 §§ 1413 and 1414 [75 P.S. §§ 1413, 1414] and the Due Process and Equal Protection clauses of the Constitution of the United States. On the road thereto they also sideswipe Article V, The Judiciary, of the Constitution of the Commonwealth of Pennsylvania, P.S., insofar as it vests judicial power in minor magistrates or justices of the peace.

Plaintiffs, both of whom had been affected by the application of §§ 1413 and 1414, but in significantly different ways, sought a temporary restraining order, preliminary and final injunctive relief, declaratory relief, money damages, the determination of a class action, and the convening of a three-judge court. A temporary restraining order was originally issued to secure the restoration of the vehicle operator's and owner's privileges of Plaintiff Leonhart pending disposition of his claims, but this matter became moot before the hearing. The Commonwealth has permanently restored both plaintiffs' operators' and registration privileges because the revocations were not in accord with the statute or the policy or regulations of the Department followed pursuant to judicial construction of the statute. There has been no further move by Plaintiffs to secure any injunctive relief at this time by way of preliminary injunction. There is no basis for such relief.

Plaintiffs allege jurisdiction under 28 U.S.C. § 1343 based on causes of action arising under the Civil Rights Act, 42 U.S.C. § 1983 and § 1985(3). They ask for relief under the Declaratory Judgments Act, 28 U.S.C. § 2201 and § 2202, the establishment of a class action under Fed.R.Civ.P. 23 and the convening of a statutory three-judge district court under 28 U.S.C. § 2281.

The civil rights cause of action is based on allegations that the state statutes on their face and as applied deprive plaintiffs of liberty and property without due process of law and deny them equal protection of the law contrary to the 14th Amendment of the Constitution.

An examination of the pleadings and evidentiary material reveal that the causes of action of each of the two plaintiffs arise from significantly different factual situations.

The plaintiff Sanner was sued in a Pennsylvania Magistrate's court in a civil suit for damages arising out of an automobile accident. Liability was found and judgment was entered against him, which judgment was recorded in the county Prothonotary's office. Under the Pennsylvania statute such a judgment debtor is subject to suspension of his operator's and registration privileges if no insurance or other security is available to satisfy the judgment. Sanner received a thirty day prior notice of

the revocation of his operating privileges under the statute, which notice also informed him that he need not comply if he satisfied the judgment. Sanner then paid the judgment to the judgment creditor and requested the necessary satisfaction piece. This entailed some delay but when received Sanner took this to the Prothonotary and requested that notification be sent to the Commonwealth of satisfaction of the judgment. By delay or inadvertence the Commonwealth did not withdraw the order of suspension in time and a State Policeman came to Sanner's home to secure the license. It took Sanner about thirty days to secure a duplicate copy of the Certificate of Satisfaction and send it to the Commonwealth in Harrisburg to have his license restored. In fact it was restored. The Commonwealth admits its delay or mistake in overlooking the Certificate of Satisfaction and states that Sanner's license is now permanently restored. Sanner claims that he suffered monetary damage during the period of suspension and that he continues to suffer a detrimental effect because his present driver's license reveals that it was previously revoked and restored. The consequences of this alleged "bar sinister" are not otherwise pleaded.

Plaintiff Leonhart was a sleeping passenger in an automobile driven by his wife which was involved in an accident. No evidence of Leonhart's financial responsibility to satisfy a judgment being of record he was called before a Hearing Examiner for the purpose of a preliminary determination of the likelihood of being held liable for the damages arising from the accident. Being informed by the Examiner that such a finding was possible and that he might avoid the operator's and vehicle license suspension by entering into an agreement with the claimant, Leonhart executed a judgment note for installment payments which the claimant duly filed with the Prothonotary of the county involved. Leonhart later defaulted under this agreement and notice of the existence of the unpaid judgment was given to the Department.

His license was suspended but upon the Department being informed that the judgment on which the suspension was based was entered by confession and not as a result of a judicial proceeding in which liability was determined his license was permanently restored. It appears from the pleadings that Leonhart was notified of the suspension of his motor vehicle privileges thirty days prior to the effective date thereof, March 14, 1975, that he did not return the requested documents on March 14, 1975, that the application to this court for temporary restraining order was made and granted March 18, 1975 and that on the same date the Department issued an official notification of restoration of motor vehicle privileges to the plaintiff Leonhart. The Commonwealth bases its action in restoring the motor vehicle privileges on the holding of the Commonwealth court of Pennsylvania in *Commonwealth v. Roeting,* 7 Pa.Cmwlth. 317, 300 A.2d 125 [1973] which held that no suspension of motor vehicle privileges could be made under the Pennsylvania statute for failure to satisfy a judgment arising out of an automobile accident when that judgment was entered into by confession and not as a result of a judicial determination of liability.

The plaintiffs have argued that the action by the Commonwealth does not render either plaintiffs' cause of action moot because of the possibility that the unlawful application of the statute against Leonhart might be repeated as to him or other debtors in the same position.

## THE THREE-JUDGE COURT CLAIM

Neither plaintiff now seeks injunctive relief nor faces any future impairment of rights by the Commonwealth. Whether or not there was such a threat at the time of issuance of a temporary restraining order upon ex parte application and without notice at the time of filing the original complaint is not material; the Commonwealth did restore the licenses and/or registrations

forthwith and permanently, not by reason of the injunction, but because of their own administrative procedures and regulations and in accordance with *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 [1971]; *Ortiz v. Depuy*, 444 F.2d 429 [3rd Cir. 1971]; *Miller v. Depuy*, 307 F.Supp. 166 [E.D.Pa.1969], and *Commonwealth v. Roeting*, 7 Pa. Cmwlth. 317, 300 A.2d 125 [1973].

It is well settled in Pennsylvania that revocation or suspension of operators or owners privileges are not constitutionally permitted without a due process hearing on the issue of liability, even where a consent judgment has been entered on damages prior to any such determination.

The Commonwealth had acknowledged its compliance with *Commonwealth v. Roeting*. By copies of correspondence filed with the court in this action it has shown that all prothonotaries in Pennsylvania have been instructed to notify the Department of Transportation whether a judgment was entered after a judicial determination of liability or by confession of judgment by consent to avoid the administrative oversight which caused Leonhart's temporary suspension. Under such circumstances our Court of Appeals in *Ortiz v. Depuy*, supra, found such administrative compliance by the state sufficient to sustain the dismissal of the federal court action.

Sanner claims that the manner in which judgment was obtained against him lacks procedural due process in that he was tried before a minor magistrate unlearned in the law. The Supreme Court in *Bell v. Burson*, supra, merely required that a state:

"[M]ust provide a forum for the determination of the question of whether there was a reasonable possibility of the judgment being entered against him as a result of the accident. We deem it inappropriate in this proceeding to do more than lay down this requirement. The alternative methods of compliance are several." 402 U.S.

535, at p. 542, 91 S.Ct. 1586, at p. 1591.

█ Sanner had more than the administrative hearing on probable cause. He had a full judicial hearing on liability from which there is an absolute right of appeal to the Court of Common Pleas, where the issue is tried *de novo*. Rule 1002, Rules, Civil Procedure for Justices of the Peace, 42 P.S. Appendix. The fact that the Pennsylvania judicial process was begun before a minor magistrate is immaterial. He is a judicial officer in the state's judicial system, and he was acting within the limits of his civil jurisdiction.

In Sanner's case there has been a judicial determination of liability and the requirements of *Bell v. Burson* are met. Now that Sanner has satisfied the judgment the federal question is moot.

With respect to plaintiff Leonhart, although he had a "probable cause" administrative hearing, his license was not suspended because he signed a consent judgment. Upon his failure to pay installments, notice was given of revocation. However, under judicial decisions which the Commonwealth recognizes, *Commonwealth v. Roeting*, supra, and *Miller v. Depuy*, supra, he is not subject to such suspension because judgment was by confession and Leonhart was not the driver of the vehicle. On being informed of these facts Leonhart's licenses were restored and the Commonwealth indicates its intention to observe these judicial decisions, and has further implemented its administrative procedure to avoid such revocations in the future. Such compliance renders the present federal action moot under *Ortiz v. Depuy*, supra.

### MOOTNESS

██ Defendants raise the objection that the cases of both plaintiffs are now moot. It became apparent at the time set for hearing on continuance of the temporary restraining order that no further injunctive relief was required.

Even before suit was filed (March 18, 1975) Sanner's license had been restored by March 1, 1975. While Leonhart received a notice to return his operator's and owner's registration to the Department on March 14, 1975, he did not do so and on the very date that this complaint was filed he was notified that the licenses were permanently restored.

The Commonwealth has advised us that both plaintiffs have had full and permanent restoration of operators and owners privileges, that it is observing the decisional law and has taken administrative steps to insure that oversights such as occurred here will be avoided. We follow the doctrine of the Supreme Court, "And it has been the settled practice of the Court, in contexts no less significant, fully to accept representations such as these as parameters for decision. See *Gerende v. Election Board,* 341 U.S. 56 [71 S.Ct. 565, 95 L.Ed. 745] [1951]; *Whitehill v. Elkins,* 389 U.S. 54, 57–58 [88 S.Ct. 184, 185–186, 19 L.Ed.2d 228] [1967]; *Ehlert v. United States,* 402 U. S. 99, 107 [91 S.Ct. 1319, 1324, 28 L.Ed. 2d 625]; cf. *Law Students Research Council v. Wadmond,* 401 U.S. 154, 152–163 [91 S.Ct. 720, 726–727, 27 L.Ed.2d 749] [1971]" *DeFunis v. Odegaard,* 416 U.S. 312 [1974] (pp. 317–318, 94 S.Ct. 1704 (p. 1706), 40 L.Ed.2d 164).

A case is "moot" when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy, see *United States v. Logan Co.,* 147 F.Supp. 330 [W.D.Pa.1957].

In *DeFunis v. Odegaard,* cit. supra, (p. 319, 94 S.Ct. p. 1707) the Court noted "that an actual controversy must exist at the stages of appellate or certiorari review, and not simply at the date the action is initiated."

In *Board of School Commissioners of the City of Indianapolis v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), where certain high school students sought to restrain enforcement of school regulations, and prevailed in the District Court in 1972, were affirmed by the Court of Appeals in 1973, it was learned for the first time at argument before the Supreme Court that all plaintiffs had graduated.

"[I]n these circumstances, it seems clear that a case or controversy no longer exists between the named plaintiffs and petitioners with respect to the rule at issue." (p. 129, 95 S.Ct. p. 850).

Because no class action had been properly certified and no class identified, the entire issue was deemed moot, the judgment below was ordered vacated and the complaint ordered dismissed.

*CLASS ACTION*

■ While Plaintiffs' Complaint contained an allegation that they desired to proceed as a class action, there has been no certification of a class. Because the question of mootness as to the named plaintiffs became apparent by the time set for the hearing on the temporary restraining order, and because of the different nature of the due process claims of the plaintiffs, it did not appear that they were proper representatives of a single class. Nothing further was set forth in the Motion for Determination of class action except suggested broad determination of the class. No evidentiary material was presented and no action was taken on the motion.

We, therefore, have no class action; we have plaintiffs whose causes of action are moot and we have nothing to show that there is a reasonable expectation that the wrong will be repeated, under the doctrine of the *United States v. W. T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 [1953].

■ Plaintiffs contest the power of a single district judge to dismiss the action, citing 28 U.S.C. § 2284(5), which states:

"A single judge shall not . . . dismiss the action, or enter summary or final judgment."

They urge that despite the mootness of the question, plaintiff Leonhart initially had *standing* to commence the action

and seek injunctive and declaratory relief. He was at that moment under an order to surrender his licenses, and his *standing* could not be altered by the Commonwealth's action in restoring his privileges because that would mean that standing could always be destroyed by a voluntary restraint of enforcement to a particular individual. However, we deem the Commonwealth's declaration of policy and its administrative procedures adopted to pursue that policy sufficient for our purposes. In all events, dismissal may be ordered by a single judge if "the general requisites of federal jurisdiction are not present." *Atlee v. Laird*, 339 F.Supp. 1347, 1350 [E.D.Pa.1972]. We are advised to give applications for a three-judge court a "judicious screening". *Majuri v. United States*, 431 F.2d 469, 474 [3rd Cir. 1970]. But, contrary to Plaintiffs' assertion, mootness raises a jurisdictional question. Whatever the standing of either plaintiff at the time of filing, the case was clearly moot as to both plaintiffs on the date set for hearing on the temporary restraining order a few days later.

> "The starting point for analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.' *North Carolina v. Rice*, 404 U.S. 244, 246 [92 S.Ct. 402, 404, 30 L.Ed.2d 413] [1971]. The inability of the federal judiciary 'to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.' *Liner v. Jafco, Inc.*, 375 U.S. 301, 306, n. 3 [84 S.Ct. 391, 394, 11 L.Ed.2d 347] [1964]; see also *Powell v. McCormack*, 395 U.S. 486, 496, n. 7 [89 S.Ct. 1944, 1950, 23 L.Ed.2d 491] [1969]; *Sibron v. New York*, 392 U.S. 40, 50, n. 8 [88 S.Ct. 1889, 1896, 20 L.Ed.2d 917] [1968]. Although as a matter of Washington state law it appears that this case would be saved from mootness by 'the great public interest in the continuing

issues raised by this appeal,' [*DeFunis v. Odegaard*] 82 Wash.2d 11, 23 n. 6, 507 P.2d 1169, 1177, n. 6 [1973], the fact remains that under Art. III '[e]ven in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction.' *North Carolina v. Rice*, supra, 404 U. S. at 246 [92 S.Ct. [402] at 404]." *DeFunis*, cit. supra, p. 316, 94 S.Ct. p. 1705.

In *Dale v. Hahn*, 440 F.2d 633 [2nd Cir. 1971], without passing on the question of plaintiff's standing at the commencement of the action, where it was clear that she no longer had standing to obtain injunctive relief, the court of appeals affirmed the denial of a motion for a three-judge court.

Finding all causes of action moot, this court has no jurisdiction in the matter, and the motion of Defendants to dismiss will be granted.

## THE CHANGE OF VENUE MOTION

■ Defendants had moved for a change of venue to the Middle District of Pennsylvania where a similar action is now pending, for possible consolidation. Prior to the 1966 amendment, the venue statute would have compelled this (28 U.S.C. § 1391(b)) because all defendants are state officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania. As the statute now reads, it is a likely conclusion that these claims arose in Harrisburg where all operative decisions affecting plaintiffs' rights took place. However, it is not necessary to determine the propriety of venue in this District because in any event 28 U.S.C. § 1404 or § 1406 would permit a transfer.

This and other actions involving the same administrative determinations under the same statute by officers of statewide jurisdiction have been brought or are now pending in various federal judicial districts in Pennsylvania. We believe that a strong public policy would

favor the litigation of substantially similar issues in the same tribunal, particularly where these issues concern the constitutionality of a particular state statute enforced in three United States Judicial Districts in one state. The travel of parties or witnesses in this and the related cases would not be material because there appear to be no contested fact issues but rather a determination of a question of law. Public expenses can be saved by not requiring state officers and attorneys to defend substantially the same lawsuit in various parts of the state; these officers and attorneys are representing a public interest; inconsistent results can be avoided; the matter can be reviewed in a single appeal rather than by piecemeal appeals from the various Pennsylvania Districts; judicial efficiency and economy are achieved. See: *Jacobs v. Tenney,* 316 F.Supp. 151 (D.Del.1970); *Schneider v. Sears,* 265 F.Supp. 257 (S.D.N.Y.1967); Freiman v. Texas Gulf Sulphur Co., 38 F.R.D. 336 (N.D.Ill.1965). "It would be inexcusably poor judicial administration to permit a situation where a judge or judges in the District of Massachusetts and a judge or judges of this Court would be devoting time and effort to the same questions of law and fact." Wyatt, J., in *Schlusselberg v. Werly,* 274 F.Supp. 758 (S.D.N.Y.1967).

The Multidistrict Litigation Statute, 28 U.S.C. § 1407 alleviates this problem nationwide. We believe the same result can be achieved in a single state with three federal judicial districts by the use of 28 U.S.C. § 1404.

Transfer for possible consolidation is a well recognized basis for the exercise of discretion in employing 28 U.S.C. § 1404. *Firmani v. Clarke,* 325 F.Supp. 689 (D.Del.1971); *Thomas v. Silver Creek Coal Co.,* 264 F.Supp. 833 (E.D. Pa.1967); *Medtronic v. American Optical Corp.,* 56 F.R.D. 426 (D.Minn.1971); *Maxlow v. Leighton,* 325 F.Supp. 913 (E.D.Pa.1971).

Because of the current interest of legal service organizations representing the interests of indigent debtors in the statute at issue here multiple suits in the several Districts making the same attack upon the statute are foreseeable. Such transfer and consolidation to the District containing the state capitol where similar litigation is pending would be highly advantageous.

Were we not compelled to dismiss for want of jurisdiction such a transfer would be ordered.