Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety *v.* David V. Rodgers, Appellant.

Argued June 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*William H. Mitman, Jr.,* for appellant.

*John L. Heaton,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, July 22, 1975:

This is an appeal from the ruling of the lower court upholding the action of the Secretary of Transportation (Secretary) suspending appellant's Pennsylvania operator's license and vehicle registrations under the provisions of Article XIV (Motor Safety Responsibility, more commonly referred to as "financial responsibility" laws) of the Vehicle Code, Act of April 29, 1959, *as amended,* 75 P.S. §1401 et seq.

The facts show that appellant was involved in a single car motor vehicle accident on July 31, 1971, in Denver, Colorado. Thereafter, Duane Alger and Barbara Alger t/a Dunkin' Donuts brought suit against appellant and against the owner of the vehicle in the El Paso County (Colorado) District Court. Appellant alleges that he never received any notice of this action other than the notice from the Secretary. In any case, on September 25, 1973, a default judgment was entered against appellant in the amount of $2300.00 plus costs in the Colorado court. In accordance with Colorado law, this judgment, which was and remains unsatisfied to any extent, was certified

to the Pennsylvania Department of Transportation.[1] On September 4, 1974, the Secretary notified appellant that his license and vehicle registration would be suspended effective October 4, 1974, under the authority of Section 1413 of The Vehicle Code, 75 P.S. §1413, for failure to satisfy the Colorado judgment and failure to furnish proof of financial responsibility. Section 1413 reads in part as follows:

"(a) The secretary, upon receipt of a certified copy of a judgment, shall forthwith suspend the license and registration of any resident operator or owner and any nonresident's operating privilege of any person against whom such judgment was rendered, except as hereinafter otherwise provided in this section and in section 1416."

Appellant appealed to the Chester County Court of Common Pleas which court, on December 20, 1974, affirmed the Secretary's action on the basis that "[a] judgment regularly entered by a sister state having general jurisdiction is entitled to full faith and credit in Pennsylvania".

Appellant raises three issues on appeal here. The first two issues question the authority of the Secretary to act under Section 1405 of The Vehicle Code, 75 P.S. §1405, which is a section dealing with reciprocity. In this case, the Secretary acted under only Section 1413, not under Section 1405, and, therefore, those issues are not properly before us. Furthermore, Section 1405 is limited in its application to suspensions under Section 1404 for failure to post security for possible future judgments as will be more fully discussed hereinafter.

Appellant's main argument is that a suspension under Section 1413 for the nonpayment of a default judgment arising out of a motor vehicle accident violates appellant's constitutional right to due process. He argues that the

---

1. For a comparable requirement, see Section 1412 of The Vehicle Code, 75 P. S. §1412.

purpose of the financial responsibility laws, and in particular Section 1413, is to punish negligent drivers and to act as a deterrent to negligent driving. He contends that the Secretary's action in suspending the license, based solely on the default judgment and without any evidence of negligence, was an abuse of discretion and a denial of due process. In support of these arguments, appellant relies on *Commonwealth v. Roeting*, 7 Pa. Commonwealth Ct. 317, 300 A. 2d 125 (1973), where we ruled Section 1413 unconstitutional in its application to a particular judgment debtor.

In that case, as here, the judgment debtor's license was suspended for failure to satisfy a judgment arising from a motor vehicle accident in which the judgment debtor had been involved. In *Roeting, supra,* the judgment was obtained by means of a judgment note executed by Roeting. The note contained a confession of judgment clause. The judgment creditor confessed judgment against Roeting and a certified copy of the unpaid judgment was forwarded to the Secretary who suspended Roeting's license under Section 1413. Roeting's appeal below was sustained, and the Commonwealth appealed to us. In dismissing the Commonwealth's appeal, we held in *Roeting* that the Secretary could not suspend a license without having before him sufficient evidence relating to the accident to enable him to determine that the judgment was the result of the judgment debtor's negligent driving, and that the judgment itself did not constitute such evidence.

For reasons given in this opinion, *Roeting,* insofar as it stands for the proposition that under Section 1413, the Secretary must first determine that the judgment is based on the judgment debtor's negligent driving, must be overruled.

## PURPOSE OF SECTION 1413

Our holding in *Roeting* was based on our determination that the purpose of Section 1413 was to punish

negligent drivers. We said there that, absent a determination that the judgment resulted from the judgment debtor's negligent driving, a suspension under Section 1413 violated the debtor's constitutional rights to due process. We have concluded that our determination of the purpose of Section 1413 was incorrect.

The issue that the purpose of Section 1413 might not be to punish negligent drivers was not raised in *Roeting*—the issue there being whether the judgment was sufficient evidence of negligence in itself to invoke Section 1413. In the instant appeal, the Commonwealth argues strongly that the purpose of Section 1413 is to provide leverage for the collection of damages from those who have been held liable. We are constrained to agree.

In *Perez v. Campbell,* 402 U. S. 637 (1971), the Supreme Court of the United States ruled that an Arizona statute[2] which permitted the state to suspend a license for an unsatisfied judgment after the judgment had been discharged in bankruptcy was invalid under the Supremacy Clause of the Constitution of the United States as being in conflict with federal bankruptcy laws. *Perez,* in effect, overruled opposite conclusions in *Kesler v. Department of Public Safety of the State of Utah,* 369 U. S. 153 (1962), and *Reitz v. Mealey,* 314 U. S. 33 (1941). Both *Kesler* and *Reitz* had ruled that the purpose of the respective state laws was not to benefit judgment creditors or the public, but rather to punish and deter negligent driving. *Kesler* and *Reitz* held that because the state statutes did not have the *purpose* of frustrating federal bankruptcy laws, the state laws were not un-

---

2. The Arizona statute is virtually identical to the second paragraph of Section 1414 of The Vehicle Code, 75 P.S. §1414. Section 1414 governs the length of suspension under Section 1413. The second paragraph of Section 1414 reads:

"A discharge in bankruptcy following the rendering of any such judgment shall not relieve the judgment debtor from any of the requirements of this article."

constitutional even though they had the *effect* of frustrating federal law.

The *Perez* court held that the *purpose* of the state law was not controlling, and that any state which had the *effect* of frustrating federal law was invalid under the Supremacy Clause. *Perez* went on, however, to state that the purpose of the Arizona law, and of similar laws in other states, was to insure payment to judgment creditors from those who had been adjudged liable in motor vehicle accident cases. *Perez* then criticized both *Kesler* and *Reitz* for their findings of legislative purpose. In discussing the treatment of that issue in those two cases, the *Perez* court said: ". . . [T]he present case raises serious doubts about whether the Court [in *Kesler* and *Reitz*] was correct even in its basic assumptions [as to legislative purpose]." 402 U. S. at 653.

We are persuaded that the purpose of Section 1413 is not to punish negligent drivers, but rather to protect the public from the financial irresponsibility of those who, regardless of their competency to drive, have had judgments entered against them as a result of motor vehicle accidents. Stated conversely, the purpose of Section 1413 is to require those persons who use the public highways to be financially responsible to those who suffer injury in their persons or property by virtue of such use. The legislative purpose of attempting to more readily provide a source of compensation to motor vehicle accident victims is a legitimate state interest.

## DUE PROCESS

The instant decision is not in conflict with *Bell v. Burson*, 402 U. S. 535 (1971). *Bell* held that due process required the opportunity for a hearing to determine whether there was a reasonable possibility of a judgment being rendered against a driver as a result of a motor vehicle accident before suspending that driver's license for failure to post security for possible future

judgments. The statute attacked in *Bell* is virtually identical to Sections 1404 through 1407 of The Vehicle Code, 75 P.S. §§1404-1407, and it is not contested by the Commonwealth that any attempt to suspend a driver's license for failure to provide security for a possible future judgment, without some prior determination by the Secretary of the reasonable possibility of a judgment being entered against the driver due to his negligence, would run afoul of *Bell*. Section 1404 speaks in terms of fault in the same way as did the statute interpreted in *Bell*. It is concerned with security for possible future judgments, and since no judicial process would have as yet determined liability, a requirement to post security under that section must be based on some evidence of the reasonable possibility that the driver will be found liable, *i. e.*, some evidence of negligence. That, however, is not the issue here. Here, the claims of the victims have already been reduced to a judgment.[3]

*Bell* does not stand for the proposition that a due process hearing must be held to produce some evidence of negligence before suspending a license for failure to pay a judgment already entered. In fact, the Supreme Court of the United States indicated in *Bell* that the defective procedure in that case would be cured by withholding suspension until the action for damages by the injured party had been adjudicated. 402 U. S. at 542-43.

Considering what we here determine to be the purpose of Section 1413, once a claim has been reduced to a judgment, the only due process requirements to be complied with at a hearing before suspension would be a determination that the person whose license is in jeopardy is the same person against whom the judg-

---

3. In *Zimmer v. Zimmer*, 457 Pa. 488, 491, 326 A.2d 318, 320 (1974), the Pennsylvania Supreme Court said: "This Court has long held that a judgment by default is res judicata and quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned."

ment was entered.[4] The judgment debtor cannot be permitted to attack the merits of the judgment in a collateral action such as a license suspension proceeding.

This is not to say that a judgment debtor is without means to retain his license. In addition to arranging to pay the judgment outright or by installments,[5] or, according to *Perez, supra,* by declaring bankruptcy, a judgement debtor could directly attack the judgment itself. A court would be hard-pressed not to find an abuse of discretion if the Secretary refused to grant a stay of suspension pending the outcome of such a direct attack. There is no indication in this record that appellant followed any of these avenues.

## FULL FAITH AND CREDIT

Lastly, appellant argues that Section 1413 refers only to Pennsylvania judgments. The statute itself, however, speaks only of "a judgment." Further indication that the term "judgment" is not limited to Pennsylvania judgments is found in Section 1412 of The Vehicle Code, 75 P.S. §1412, wherein the Secretary is required to send a certified copy of a judgment against a nonresident to the official in charge of licenses and registrations in the nonresident's home state. We must follow the mandate of the Constitution of the United States and accord full faith and credit to the Colorado judgment.

Affirmed.

———

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I respectfully dissent.

While I agree that our decision in *Commonwealth v. Roeting,* 7 Pa. Commonwealth Ct. 317, 300 A. 2d 125

———

4. That appellant is the judgment debtor is admitted here and we will not remand for the purpose of determining undisputed facts.

5. Sections 1414 through 1416 of The Vehicle Code, 75 P.S. §§1414-1416.

(1973) was in error, I am constrained to conclude that the procedure followed in the present case of license revocation based on a default judgment entered without notice to the judgment debtor cannot withstand the constitutional rigors of due process.

In light of *Perez v. Campbell,* 402 U. S. 637 (1971), it is difficult to hold otherwise than that the purpose of our so-called Financial Responsibility statute is not only to punish negligent drivers, as we held in *Roeting,* but also that it serves as a method to insure judgment creditors payments from motor vehicle judgment debtors. Further, I would agree that *Bell v. Burson,* 402 U.S. 535 (1971), dictates a hearing for determination of a possible judgment *in futuro* being rendered, *i. e.,* the situation where license revocation occurs prior to a civil liability judgment.

However, as the majority says, such is not the case here. Here the civil claim has already been reduced to judgment, albeit a default judgment, and in this situation the majority sees no need for a hearing *as to negligence* prior to license revocation. When the judgment occurs prior to the revocation, and that judgment is one resulting from full litigation or even from judgment by default or confession where the judgment debtor had notice of the claim of negligence against him, it is unreasonable to conclude that such an *informed* judgment debtor could expect a further hearing on fault and collaterally attack the prior judgment. But where, as here, the judgment debtor has a default judgment entered against him of which he has no notice, it strains reason to say that that judgment makes any statement at all as to negligence in the motor vehicle mishap which now serves as the basis for the revocation of his license.

On this basis, I dissent.