CASCIO, J.,
This case is before the court on a license suspension appeal filed by petitioner in which we are required to address the financial responsibility provisions of the Pennsylvania Vehicle Code under fairly unusual circumstances. First, we have a case which appears to involve an issue of first impression concerning the applicability of the financial responsibility provisions of the Vehicle Code in a case involving an indemnity claim, under the provisions of a lease agreement, being pursued by a third party. Second, we are faced with a request by the third party seeking indemnity to intervene in the action.
This matter arose as a result of an accident which occurred on the Pennsylvania Turnpike involving a collision between a tractor-trailer being driven by petitioner and two other similar vehicles. This accident resulted in property damage to all of the vehicles.
At the time of the accident, according to the record, petitioner was leasing his tractor-trailer to Alert Motor Freight Inc. pursuant to a lease agreement, a copy of which is attached as exhibit A to the petition for appeal. Under the provisions of the lease agreement, petitioner agreed to carry adequate in *507 surance coverage and to hold Alert harmless from all claims for damages resulting from loss or injury to the property of third parties caused by petitioner.
Alert, through its own insurance carrier, paid claims arising out of this accident totalling $50,232.71. Subsequently Alert filed a civil action against petitioner seeking indemnification for that amount under the terms of the lease agreement. Petitioner failed to respond to the lawsuit and judgment was entered against him by default.
After more than 60 days had elapsed without satisfaction of the judgment, Alert proceeded pursuant to the provisions of 75 Pa.C.S. §1771(a)[1] to have a copy of the judgment certified by the Office of the Prothonotary in Cumberland County, Pennsylvania, and forwarded a copy of that judgment to the Department of Transportation. Subsequently, the department notified petitioner that his operator’s privileges would be suspended pursuant to 75 Pa.C.S. §1772(a) effective November 22, 1989 as a result of his failure to satisfy this judgment. On October 30, 1989, petitioner filed the within appeal and on January 3, 1990, Alert filed a petition to intervene in this proceeding. Both petitioner and the Commonwealth filed answers to the petition to intervene with petitioner opposing intervention and the Commonwealth not opposing this action.
Argument on both the petition to intervene and the appeal was scheduled for May 9, 1990, and at that time we denied the petition to intervene but permitted Alert to file a brief amicus curiae on the merits. Briefs have been filed in this matter by the Commonwealth and Alert.
*508 DISCUSSION
The essential issues in this appeal are whether Alert’s judgment against petitioner is a “judgment arising from a motor vehicle accident” thus permitting the judgment creditor to forward a certified copy of that judgment to the Department of Transportation under the provisions of section 1771(a) and whether the department acted properly in suspending petitioner’s license on the basis of this certification pursuant to the provisions of section 1772(a).
The Commonwealth takes the position that petitioner’s appeal amounts to a collateral attack on the judgment which gave rise to the suspension order and, therefore, is improper. We disagree. It is clear to us from this record that what petitioner is challenging is not the validity of the judgment entered by default but, rather, the validity of the certification of the judgment as a “judgment arising from a motor vehicle accident.” This difference is fundamental. We agree with the Commonwealth that were petitioner challenging the entry of the judgment, he would have had several avenues available to him to do so directly including an appeal to an appellate court, or a petition to open or strike the judgment.
However, neither of these remedies would address the issue of the certification of this judgment as one arising from a motor vehicle accident. In fact, even if petitioner had vigorously defended the civil action filed by Alert and had pursued that defense through verdict, post-verdict motions and ultimate appeal, the issue of certification of the judgment to the department would never have been addressed. It was only after the final entry of the judgment and the passage of the 60-day statutory period that the action by Alert in seeking certification of this judgment as a motor vehicle judgment occurred and it was only upon that occurrence that petitioner would *509 have been obligated or, in fact, aware of his need to challenge this action to preserve his license from suspension.
Our examination of the Vehicle Code, particularly sections 1771 and 1772, reveals no procedure involving either notification to the operator of the fact that such a certification has occurred or any procedures whereby the operator may challenge the certification. However, it is clear that the broad language of section 1550(a) of the Vehicle Code allows an appeal of the suspension in this case. We note that, following the statutory scheme of the financial responsibility section of the Vehicle Code, the suspension arises not out of the entry of the judgment but out of the certification of the judgment as a “judgment arising from a motor vehicle accident.” Accordingly, we find that petitioner’s appeal is appropriate and that it is not a collateral attack upon the entry of the judgment itself.
As an alternative argument, the Commonwealth sets forth the proposition that there is a presumption that a public official (here, the Cumberland County prothonotary) has performed his or her duty properly and, once the certification documents themselves have been admitted into evidence, the burden shifts to the petitioner to prove that there was an error or otherwise to rebut this presumption. While this may be true, it is all the more reason why petitioner should be permitted to proceed with his appeal in this court in an effort to rebut this presumption. It appears that the action of the protho-notary is precipitated by a request from the judgment creditor and the action of the department is precipitated by the action of the prothonotary. Thus, petitioner’s argument does not arise from the conduct of the prothonotary but, rather, from the conduct of Alert in seeking the certification of this *510 judgment as one arising from a motor vehicle accident.[2] Accordingly, we reject the Commonwealth’s argument on this basis as well.
On the merits, the Commonwealth argues that the judgment in this case is clearly a “judgment arising from a motor vehicle accident.” In response, petitioner argues that this is a judgment arising from a breach of contract and, therefore, Alert acted improperly in certifying this judgment to the Commonwealth and utilizing the sanction of section 1772(a) when it has already sought and gained its remedy arising from petitioner’s breach of its lease agreement through the entry of the judgment. Certainly, this is not the garden variety situation contemplated by section 1772 where an uninsured motorist causes a loss directly to another motorist as a result of a motor vehicle accident. While there is no case law directly on point, we did find an appellate decision involving a somewhat similar fact situation. In Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety v. Roeting, 7 Pa. Commw. 317, 300 A.2d 125 (1973), the Commonwealth Court of Pennsylvania .reviewed an order of the Court of Common Pleas of Lancaster County which reversed a suspension of Roeting’s operator’s license under section 1413, now section 1772. In that case Roeting was involved in an accident with a party insured by Harleysville Mutual Insurance Company. Roeting executed a judgment note to Harleysville which entered the note by confession in the Lancaster County Prothonotary’s Office. This *511 judgment was subsequently certified and the certification forwarded to the Department of Transportation which resulted in the suspension of Roeting’s operator’s license. Thus, the suspension resulted from a contractual obligation between Roeting and the insurance company as evidenced by the judgment note.
In sustaining the order of the lower court, the Commonwealth Court ruled that the Pennsylvania financial responsibility statute was grounded upon a theory of fault or liability for negligent driving, and where the judgment certified arose out of a confession of judgment clause in a judgment note there was insufficient evidence of negligent driving by the debtor to permit the application of the Vehicle Code suspension provisions.
However, in Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety v. Rodgers, 20 Pa. Commw. 393, 341 A.2d 917 (1975), the Commonwealth Court specifically overruled its decision in Roeting, supra, by finding that the purpose of the financial responsibility law is not to punish negligent drivers but, rather, is to protect the public from financially irresponsible drivers, regardless of the issue of competency to drive, by providing some leverage allowing for the collection of damages from those who have been held liable. The court further ruled that due process does not require the production of evidence of negligence before a license suspension where there has been failure to pay a judgment already entered and that the only due process requirement is the determination that the person whose license is being suspended is the same person against whom the judgment was entered.
In our attempt to evaluate the issue before us in light of the Roeting and Rodgers decisions, we find *512 that the Commonwealth Court has indicated, at least tacitly, that the phrase “judgment arising from a motor vehicle accident” may be somewhat broadly construed. In an effort to determine how the appellate courts have interpreted this or similar language found in the Motor Vehicle Code, we have examined all of the sections of the code we could locate which include the phrase “arising from.” Although various sections of the code include this language, the cases interpreting such language essentially fall into two categories, those arising out of 75 Pa.C.S. §1542, relating to the revocation of a habitual offender’s license, and those arising out of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq. While the cases interpreting the former are of little help, the cases interpreting the latter, as pointed out by the Commonwealth and Alert, do contain some statutory construction principles and interpretations which are of some aid to us.
Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co., 403 Pa. 603, 170 A.2d 571 (1961), is a decision by the Pennsylvania Supreme Court construing the term “arising out of” in the following manner:
“Arising out of ‘means causally connected with, not proximately caused by.’ ‘But for’ causation, i.e., a cause and result relationship, is enough to satisfy the provisions of the policy.” Id. at 607-8, 170 A.2d at 573. See also, Alvarino v. Allstate Insurance Company, 370 Pa. Super. 563, 537 A.2d 18 (1988).
From these cases, we form the conclusion that, in the case at bar, the Commonwealth must show some causal connection between the loss sustained by Alert and the motor vehicle accident in which petitioner was involved. It is also clear that “[t]his *513 connection must be more than mere happenstance.” Roach v. Port Authority of Allegheny County, 380 Pa. Super. 28, 550 A.2d 1346 (1988).
Couched in terms of the facts in the case at bar, our inquiry is distilled to a determination of whether the action giving rise to the claim of breach of contract arose from Alert’s obligation to pay damages resulting from a motor vehicle accident or whether it arose from the fact that petitioner did not have insurance on his vehicle. As we view it, the loss sustained by Alert arose as a result of the motor vehicle accident and not as a result of petitioner’s breach of the lease agreement. Only upon the occurrence of the accident and the resulting obligation of Alert to pay for these damages incurred did Alert sustain damages as a result of petitioner’s breach. Under this scenario, it would appear to us that the judgment acquired by Alert was a “judgment from a motor vehicle accident” and, accordingly, the provisions of sections 1771 and 1772 were correctly applied.
We also note that when enacting various sections of the Vehicle Code, the legislature has been careful, when intending a more strict definition of causation, to use language clearly evidencing that purpose. See, e.g., 75 Pa.C.S. §§3732 and 3735, both of which provide that a conviction may result “when the violation is the cause of death.” In these sections, the legislature clearly intended that there be a showing of direct causation between the violation of the Vehicle Code and the cause of the loss as opposed to proximate causation as appears to be the standard applicable to section 1771.
For these reasons, we find that the action of the Department of Transportation in suspending petitioner’s operating privileges was appropriate under the *514 provisions of section 1772 and, accordingly, the appeal must be dismissed and the suspension reinstated.
ORDER
And now, September 28, 1990, consistent with the foregoing memorandum, petitioner’s appeal is dismissed and the suspension of his operator’s privileges is reinstated.

. This section of the Vehicle Code states: “Whenever any person fails within 60 days to satisfy any judgment arising from a motor vehicle accident, the judgment creditor may forward to the department a certified copy of the judgment.”

. There is case law which indicates that the action of the prothonotary may not be challenged on appeal because, under the Vehicle Code, such action is mandatory: See Commonwealth v. Mabel, 85 D.&C. 367 (1954), applying sections 1412 and 1413 (repealed) of the Vehicle Code, predecessors to sections 1771 and 1772.