Frank, J.
(concurring). While I concur in the result reached by my brethren, I do so with respect to defendant’s motion for an order vacating the order of replevin only because I find that the artisan’s lien (under Lien Law, § 180), upon which defendant predicated its right to continued possession of the subject goods, was itself invalid for failing to comply with requisite procedures of due process. The broad mandate of Fuentes v. Shevin (407 U. S. 67) was recently extended by our Court of Appeals to apply to section 181 of the Lien Law covering innkeepers’ liens which are similar in purpose and character to an artisan’s lien. (Blye v. Globe-Wernicke Realty Co., 33 N Y 2d 15.) In declaring such section invalid, the court held (p. 19) that the failure to *579 afford notice and the opportunity to he heard before depriving a guest of the possession of his property ‘ ‘ is irreconcilable with evolving concepts of due process and is unconstitutional ”. The holding and rationale of that decision compel a companion holding that notice and opportunity to be heard are also fundamental elements of due process before a valid artisan’s lien can be imposed. Section 180 makes no provision for prior notice or hearing, nor was any such notice or opportunity, in fact, afforded to the plaintiff in this case prior to defendant’s continued retention of the property. Defendant cannot, therefore, be said to have had a valid lien thereon and since it was such statutory lien that provided the sole basis for any property or possessory right that it may have had in the goods, the invalidity of the lien necessarily negates all such rights giving defendant no standing to attack the writ of replevin here issued.
I want to make clear, however, that while I concur in the result on the limited ground above discussed, I disagree with the conclusions of my colleagues as to the scope of the Fuentes decision on replevin generally and its impact upon a case involving a valid artisan’s lien.
The Fuentes case deals with goods possessed under conditional sales contracts which were seized under two. State replevin statutes, neither of which provided for court order or prior notice to the holders of the property seized. The majority opinion in Fuentes (p. 80) frames the issue before it in terms of 11 whether procedural due process * * * requires an opportunity for a hearing before the State authorizes its agents to seize property in the possession of a person upon the application of another ”. (Emphasis added.) The majority concludes that absent “ extraordinary situations ” such as those involving some important governmental or general public interest, or a showing that there is an immediate danger that a debtor will destroy or conceal disputed goods, a prior opportunity for a hearing is essential to due process, and that since no such notice had been given in the cases under consideration “ appellants were deprived- of possessory interests in those chattels that were within the protection of the Fourteenth Amendment ’ ’ (p. 84; italics added).
The 11 prior notice ’ ’ requirement has already been applied in appellate construction of this State’s replevin statute in a case where property held under security agreements was seized under an ex parte order of replevin. That order, which was issued and executed prior to the Fuentes decision, was subsequently vacated upon retroactive application of the Fuentes’ *580 principles, the court holding that the order did not conform to due process because of the failure to afford notice to the respondent and an opportunity to be heard. (Cedar Rapids Eng. Co. v. Haenelt, 39 A D 2d 275.)
While the delineation of the issue and the terminology of the holding in the Fuentes case both emphasize “ possession ” and ‘ ‘ possessory interests ’ ’, the discussion in that case, as well as in Cedar Rapids (supra), indicates that what is contemplated is more than mere naked possession and that the ‘1 right to a prior hearing * * * attaches only to the deprivation of an interest encompassed within the Fourteenth Amendment’s protection” (p. 84; italics added). My colleagues, in my-opinion, place an inordinately narrow construction on the meaning of such term. It is apparently their view that only interests ‘ ‘ protected by contract ’ ’ are contemplated and that a lien or security interest, as was here asserted, does not fall within the protected sphere. The reliance upon the out of context quoted reference to “ goods * * * dearly bought and protected by contract ” appearing in Fuentes is misplaced in light of the footnote appended to that clause which expressly states that the possessory interest of another of the appellants in certain items was no less sufficient to invoke due process safeguards even though that interest was ‘ ‘ not protected by contract” but was predicated upon a dispute as to whether appellant or her spouse had a legal right to such possession. (Fuentes v. Shevin, supra, p. 86, n. 16.) It is clear from a reading of the Fuentes decision, in its entirety, that far more than contractually founded property interests are at issue.
I recognize that a distinction exists between a security interest in chattels and 'ownership rights therein. The line of distinction, however, is increasingly difficult to draw and both partake of property interests. The court in Fuentes (p. 86) made clear that the Fourteenth Amendment’s protection of “property” ‘ ‘ has never been interpreted to safeguard only the rights of undisputed ownership. Bather, it has been read broadly to extend protection to 1 any significant property interest ’ * * * including statutory entitlements ” citing Bell v. Burson (402 U. S. 539) where the interest at issue was the right to a driver’s license. I believe that such broad protection extends to and encompasses a security interest by virtue of a statutory lien. That such is a “ significant property interest ” is perhaps best seen from the manner in which the lienor’s position is adversely affected upon the retaking of the goods. He is no longer in possession of the security for his debt with *581 the burden of pressing forward, or payment, resting upon the other.
The argument that only money is involved and that the requisite bond fully replaces any interests in the property is expressly rejected in the Fuentes case. The court there stated (p. 83) that such bond requirements “ are hardly a substitute for a prior hearing, for they test no more than the applicant’s own belief in his rights ’ ’ and further that ‘ ‘ the minimal deterrent effect of a bond requirement * * * as a matter of constitutional principle * * * is no replacement for the right to a prior hearing that is the only truly effective safeguard against arbitrary deprivation of property ’ ’.
The holding in the Cedar Rapids case (39 A D 2d 275, supra) even more directly refutes the bond argument here raised. In that case, in distinction to Mrs. Fuentes ’ household goods, the court was dealing with tools used in the conduct of a business' the seizure of which would merely result in loss of moneys. Such loss too could have fully been compensated by an award of money damages, payment of which would have been assured by the requisite undertaking posted under CPLR 7102 (subd. [e]). The Appellate Division, however, found that considerations of constitutionally protected due process were paramount and upheld the vacating of the order of replevin notwithstanding the bond.
Accordingly, I would find that an artisan’s lien constitutes a significant property interest within the protection of the Fourteenth Amendment, and that an order of replevin would contravene due process requirements if it failed to afford the lienor-possessor prior notice and opportunity to be heard. Thus, if defendant had a valid artisan’s lien in this case, I would vote to reverse the lower court’s denial of the motion to vacate the original order of replevin.
Quinn and Fine, JJ., concur in Per Curiam opinion; Frank, J., concurs in result in separate opinion.
Order affirmed, with $10 costs.