## WICK R. CHAMBERS *v.* CITY OF NEW HAVEN ET AL.

COURT OF COMMON PLEAS    NEW HAVEN COUNTY    FILE No. 93665

Memorandum filed October 10, 1974

*M. Mitchell Morse,* of New Haven, for the plaintiff.

*Thomas F. Keyes, Jr.,* corporation counsel, for the defendants.

DONALD T. DORSEY, J. In this action the plaintiff seeks a permanent injunction compelling the defendants, members of the New Haven board of police commissioners and the city of New Haven,

to appoint him to the position of supernumerary policeman. The action first came to court on June 11, 1974, when the plaintiff obtained a temporary injunction permitting his attendance at the department of police service training program. The defendants filed an answer on July 2, 1974, denying the operative portions of the plaintiff's complaint. Thereafter an evidentiary hearing was held on August 6, 1974.

In his complaint the plaintiff alleges that certain appointments for the position of supernumerary policeman made by the commissioners in April, 1974, and the rejection of the plaintiff for that position were illegal, arbitrary, capricious, in bad faith and in violation of the first and fourteenth amendments to the United States constitution and article first of the Connecticut constitution.

The complaint charges that the board discriminated against the plaintiff because he is a conscientious objector. It further charges the board with violating its own rules and regulations, which require that appointments be made only from top-rated applicants. Finally, the complaint accuses the board of failing to employ standards or relevant criteria in the selection process. It is alleged that the plaintiff has been substantially and irreparably injured by the board's actions.

The plaintiff is a young man of irreproachable character, educational distinction and physical prowess who was certified to the board of police commissioners by the New Haven civil service board as eligible for appointment by the board to the position of supernumerary policeman. Of the 88 candidates so certified, the commissioners appointed 41 and rejected 47. The plaintiff was among the 47 disappointed candidates despite the fact that he had received the highest score of all candidates certified by the civil service board, both

as to the written mental test and the physical agility test. All of the rejected candidates remain on the certified list and are eligible for subsequent appointment during the life of the list, which expires at the earliest on March 11, 1975, and has a potential expiration date of March 11, 1976.

Section 127 of the charter of the city of New Haven grants to the police commissioners the sole power of appointment of supernumerary police officers under such regulations and rules "as they may adopt for the purpose, and in accordance with civil service rules." Appointments require the affirmative vote of not less than four commissioners. Section 204 of the charter excepts the appointment of supernumerary policemen and substitute firemen from the so-called "rule of three," which requires appointing agencies pursuant to § 204 to appoint or promote "from those applicants, not exceeding three, who shall stand highest on the list of those who shall have passed an examination . . . and are upon the list of those eligible to such position or promotion."

The defendants take the position that § 127 and § 204 of the charter require that the commissioners appoint exclusively from the certified civil service list and impose no obligation that the order of selection relate to the applicant's mental or physical qualifications as reflected by the civil service testing procedure. This position argues that the commissioners are vested with absolute discretion in the selection process without any requirement to adopt formal rules spelling out criteria or standards to be used in that process. In fact, the commissioners have not adopted any substantial rules but have developed the practice, which they used in making the forty-one appointments in April, 1974, of conducting brief oral interviews with candidates on the certified list and thereafter hold-

ing another meeting on the voting of individual names separately. The purpose of the interview is to view the candidate, review his background questionnaire as developed and highlighted by a police investigation, and specifically assess his motivation to become a police officer and his potential for contribution to the police service. This approach is necessarily subjective and offers the greatest latitude for favoritism, discrimination, or arbitrary decisions despite rule 13 of the department of police service, which proscribes political influence in the appointment process and prohibits religious or political discrimination.

It is conceded that the appointment of supernumerary police officers process is not reviewable by way of an appeal expressly provided for in the charter or the General Statutes.

Absent a right of appeal, the court has no jurisdiction to entertain an appeal. *Long* v. *Zoning Commission,* 133 Conn. 248; *DeFilippo* v. *Board of Police Commissioners,* 30 Conn. Sup. 290. Judicial review is not possible under a mandamus remedy since without a valid appointment the plaintiff lacks a clear and immediate right to the position in question. *Andrews* v. *New Haven,* 153 Conn. 156. For the same reasons an action in quo warranto is not available to the plaintiff since he is clearly not a public officer. Ibid.

The language of § 127 with regard to regulations centers about the word "may." It can only be construed as optional in view of the fact that § 204 of the charter clearly excepts supernumerary policemen from the "rule of three." It is apparent that the intention of the framers of the charter was to grant nonreviewable discretion to the police commissioners in the making of appointments of supernumerary policemen. This practice is not uncommon in charters granting appointive power to police

commissioners. The rationale for such a practice is found in *Delicati* v. *Schechter,* 3 App. Div. 2d 19, 24 (N.Y.): "By the very act of granting, within constitutional limits, a particular public officer a nonreviewable discretionary power, the Legislature indicates its willingness to accept the risk of unprovable arbitrary action in order to seek the accomplishment of the objectives of the grant of that discretionary power. . . . When the Legislature is no longer willing to accept that risk, it may remove the mantle of nonreviewability from administrative action."

*Delicati* rests on the presumption that, until the contrary is shown, public officers vested with discretionary powers exercise their powers in a manner consistent with their fiduciary obligation to their particular governmental unit and to the people in general. The New York courts have consistently followed the holding in the *Delicati* case. In *Kaminsky* v. *Leary,* 33 App. Div. 2d 552 (N.Y.), the police commissioner was required to pick one of three top men on a civil service certified list for appointment to the position of supernumerary policeman. The court required only that the selection be made from the list, stating that there was no requirement that the top man, Kaminsky, be selected and that refusal to select the top man and refusal to give reasons for the nonselection were not evidence that the police commissioner had acted arbitrarily. The court found in New York law no constitutional or statutory right to an explanation. This reasoning rests essentially on the New York court's conclusion that what was being asserted as a basis for a remedy was not intrinsically a right in a legal technical sense, but rather something of lesser nature, namely the privilege to be considered for a public appointment. *Redman* v. *New York City Transit Authority,* 14 App. Div. 2d 911 (N.Y.).

The *Delicati* case did note, however, that the courts distinguish between discretion and arbitrary power and strike down illegal or arbitrary power. The plaintiff in *Delicati* had not offered any compelling extrinsic evidence of capriciousness or arbitrary action but rested on the refusal of the appointing authority to give reasons and the failure of the appointing authority to appoint the top candidate, who was admittedly without blemish in law or fact. This alone, said the court, was not evidence of eligibility or arbitrariness. As illustrations of the type of arbitrary power the court would strike down, the court referred to certain liberties substantively protected by the fourteenth amendment.

In *Koscherak* v. *Schmeller,* 363 F. Sup. 932, the United States District Court for the Southern District of New York considered another challenge to the discretion of an appointing official in New York state and upheld the civil service statute as constitutional despite the fact that it required the official to give neither reasons nor a hearing to a top-rated candidate who had been passed over under the "rule of three." The court also held that the due process aspects of the fourteenth amendment to the federal constitution were not violated by these absences. The plaintiff was seeking first employment as a civil servant and claimed that achieving a top score on a competitive examination carries with it a substantial expectation of appointment, the nonrealization of which violates due process. In reaching the conclusion it did, the District Court relied on the reasoning of two Supreme Court cases, *Regents* v. *Roth,* 408 U.S. 564, and *Perry* v. *Sindermann,* 408 U.S. 593, both of which involved nontenured teachers who did not have their contracts renewed. The District Court found that the failure to appoint an otherwise qualified

candidate by resorting to the "rule of three" pass-over option deprived Koscherak of nothing he presently enjoyed, and denied the mandatory injunction sought.

In *Roth*, the Supreme Court had found that Roth, the teacher, had no property rights at all nor any rights of any sort—only a hope which gave him no rights to either stated reasons for nonrenewal of a nontenured state teacher's contract or a hearing, since neither was required by state law. The court declared that the hope of public employment is not an entitlement such as a license now being enjoyed; *Bell* v. *Burson*, 402 U.S. 535; or a welfare benefit. *Goldberg* v. *Kelly*, 397 U.S. 254.

In the instant case, although there is an allegation in the complaint that the plaintiff was rejected because he was a conscientious objector, there was not a scintilla of evidence offered that this was the reason for the rejection. Similarly, no evidence was offered that the rejection was based on any other liberty protected by the fourteenth amendment.

The hearing disclosed that various factors affected the judgment of the commissioners, including the possibility that the plaintiff might not have a stable work record and might not relate well to the ghetto community, and the fact that he did not respond quickly to questions. In addition, the commissioners gave some weight to the plaintiff's brief experience with marihuana use as a college undergraduate. The court does not find it necessary or useful in an equitable proceeding for the extraordinary remedy of a mandatory injunction to consider whether these questions were appropriate or arbitrary or to examine, as on appeal, whether the conclusions reached by the commissioners after considering these factors were legally and logically consistent and based on a sure and sufficient evidentiary base.

The only asserted basis in right, property or liberty for the extraordinary equitable remedy claimed here is the plaintiff's substantial expectation of employment based on his test scores. There is no stigma attached to the plaintiff's rejection. Nothing in the rejection process suggests immorality, nor is the plaintiff barred from future consideration for appointment during the life of the certified list of which he is a member. The plaintiff's good name and good reputation are not jeopardized by the board's action.

The plaintiff admits that he is legally not entitled to an appeal, yet he seeks substantially the benefits of an appeal in the guise of an equitable remedy. Ordinarily, equity does not have jurisdiction to remove public officers or relieve against proceedings for their removal. *Bartlett* v. *Rockville,* 150 Conn. 428, 430. The plaintiff is less than a public officer, hence more, not less, judicial discretion is required on the part of the court in this request for equitable intervention. It is the burden of the plaintiff in an action for a mandatory injunction to prove irreparable injury. To sustain this burden, he must demonstrate that he is possessed of a juridic property interest, not simply an abstract need or desire for one or a unilateral expectation of one. The subjective expectancy of employment asserted by the plaintiff in this case is not such a recognized juridic property interest as can be irreparably injured.

Therefore, the permanent injunction sought by the plaintiff is denied.