375 A.2d 146

## Joan Stewart SIMPSON

### v.

## Nicholas SAPONARA, Appellant.

Superior Court of Pennsylvania.

Argued March 21, 1977.

Decided June 29, 1977.

Samuel Kravitz, with him Melvin B. Goldstein, Philadelphia, for appellant.

Martin Leonard, Philadelphia, submitted a brief, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This appeal is from an order directing appellant to continue paying support for a child born out of lawful wedlock after that child's eighteenth birthday at the rate of $16.00 per week until further order of the lower court. We reverse.

On May 23, 1960, appellant entered a guilty plea to a charge of neglect to support a child born out of lawful

wedlock.[1]   Appellant was ordered to pay $8.00 per week for the maintenance and support of the child until she reached the age of eighteen years.   On May 25, 1974, the support order was increased to $16.00 per week.

Shortly after the child's eighteenth birthday, appellant filed a pro se petition to terminate his support obligation. The support order was terminated administratively without notice to appellee, the child's mother.   Appellee contested this action and a hearing was held on May 27, 1976.   The issue is this proceeding, as perceived by the lower court, was:

"Whether a court order against the father of an illegitimate child should automatically terminate when the child reaches the age of 18, simply because the child was illegitimate and the obligation to support her arose after a criminal conviction of her father."

As previously indicated, the order entered by the court following the hearing of May 27, 1976 directed that appellant continue to provide support "at the rate of sixteen ($16.00) dollars per week until further order of this Court."

The statute under which appellant was convicted, former 18 P.S. § 4732, provides, *inter alia* :

"Whoever, being a parent, wilfully neglects or refuses to contribute reasonably to the support and maintenance of a child born out of lawful wedlock, whether within or without this Commonwealth, is guilty of a misdemeanor . . . .

.     .     .     .     .

Before the trial, with the consent of the defendant indorsed on the bill of indictment, as now provided by law, or at the trial on entry of a plea of guilty, or after conviction, instead of imposing the fine herein provided, or in addition thereto, the court having regard to the circumstances and to the financial capacity of the defendant, may make an order, subject to change from time to time, as circumstances may require, directing the defendant to

1.   Act of June 24, 1939, P.L. 872, § 732 (18 P.S. § 4732), *repealed,* Act of December 6, 1972, P.L. 1482, No. 334, § 5.

pay a certain sum periodically, for such time and to such person as the court may direct."

At the time of appellant's conviction, the definition of "child" relevant to the above-quoted provision was found in former 18 P.S. § 4731,[2] which states that "the word 'children' shall be limited to mean children under sixteen (16) years of age, and also such children over sixteen (16) and under twenty-one (21) years of age, as by reason of infirmity are incapable of supporting themselves." That definition was subsequently amended to specify that "the word 'children' shall be limited to mean children under sixteen (16) years of age, and also such children over sixteen (16) and under eighteen (18) years of age, as by reason of infirmity are incapable of supporting themselves."[3] An effectively identical definition appears in our present Crimes Code.[4]

The record reflects that, as of May 27, 1976, the date of the hearing and the order appealed herein, the child was a nineteen year old high school student and planned to enter college in the fall. Nowhere in the record is there mention of any infirmity, disability, or other unusual circumstances affecting her. The accounting records of the lower court showed appellant to be $176.00 overpaid in his support obligation as of the child's eighteenth birthday. On these facts, it is clear that the lower court had no power to extend appellant's support obligation pursuant to a conviction under former 18 P.S. § 4732. No statutory authority for such an extension exists in the former Penal Code or the present Crimes Code.

Both appellee in her brief and the lower court in its opinion cite recent United States Supreme Court decisions which have been directed to removal of the stigma and disability traditionally inherent in the status of illegitimacy.

**2.** Act of June 24, 1939, P.L. 872, § 731 (18 P.S. § 4731), *repealed,* Act of December 6, 1972, P.L. 1482, No. 334, § 5.

**3.** As amended by the Act of June 16, 1972, P.L. 421, No. 122, § 4, *repealed,* Act of December 6, 1972, P.L. 1482, No. 334, § 5.

**4.** 18 Pa.C.S. § 4321(d)(2).

In *Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973), the Supreme Court states that:

"[A] State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." [5]

We do not hold or imply, by our decision in this case, that illegitimate children in this Commonwealth do not have a right to support and maintenance coextensive with that of legitimate children.[6] We hold simply that the statute under which appellant was convicted provided the lower court with no power to extend appellant's support obligation beyond the eighteenth birthday of the child in question.

The order of the lower court is reversed and appellant's support obligation under the conviction at No. 39645 May Term, 1960, is terminated.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

I agree with the majority's conclusion that the statute under which appellant was convicted "provided the lower court with no power" to extend appellant's obligation to support his illegitimate daughter Ruth Anne beyond her sixteenth birthday. Majority opinion at 380. The majority's opinion implies, however, that in entering its order the lower court relied on the statute; since in fact the lower court's

5. Although our disposition in the instant case does not require that *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), be distinguished, it is interesting to note that, in *Gomez*, Texas law recognized *no* enforceable duty on the part of a father to support his illegitimate children.

6. For example, The Pennsylvania Civil Procedural Support Law, Act of July 13, 1953, P.L. 431, § 1 (62 P.S. § 2043.31) *et seq.*, draws no distinctions based on legitimacy.

reasoning, as I understand it, had nothing to do with the statute, I wish to add a comment.

The hearing was on May 27, 1976. Two days before the hearing Ruth Anne had had her 19th birthday; she expected to graduate from public high school in June, and had been accepted for admission to Mansfield State College in the fall. Record at 42a. In ordering that Ruth Anne's father must continue to contribute towards her support, the lower court reasoned as follows: first, "[t]he law has long recognized" that if Ruth Anne were a legitimate child, her father would have to continue to contribute towards her support, even though she had reached 18, so that she could complete her public high school education, Record at 46a, citing *Commonwealth v. Gilmore*, 97 Pa.Super. 303 (1929); and second, the fact that Ruth Anne was illegitimate should make no difference, for the "[United States] Supreme Court has firmly stated that no distinction shall be drawn between legitimate and illegitimate children in regard to support from their natural fathers," Record at 47a, citing, *inter alia, Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). In addition, the lower court suggested that the father might have to continue to contribute towards Ruth Anne's support while she attended college. Record at 46a. However, the court declined to enter an order to that effect, believing that to do so would be premature. Record at 47a ("But she is still in high school."). Instead, the court simply ordered that the father was "to continue to support the child . . . until further order of this Court." Record at 45a.

It is not apparent what sort of hearing the lower court believed it was conducting. At the beginning of its opinion the court states:

This is a proceeding to determine whether the petitioner, Nicholas Saponara, has a continuing obligation to support his 19 year old daughter, a high school student. Mr. Saponara, *pro se*, filed a petition to terminate support for his daughter, Ruth Anne Stewart, shortly after she had celebrated her eighteenth birthday. The support was terminated administratively without notice being given to

the mother. This hearing was held to review the above-mentioned administrative action and to determine whether support should continue.

Record at 45a.

Unfortunately, the *pro se* petition is not included in the record. It is possible that the lower court believed it was conducting a hearing under the Pennsylvania Civil Procedural Support Law, Act of July 13, 1953, P.L. 431, § 1 *et seq.*, 62 P.S. § 2043.31 *et seq.* Indeed, the court's reasoning in its opinion suggests to me that this was the court's belief. However that may be, Ruth Anne's father was evidently under the impression that the hearing was incident to his having pleaded guilty to having neglected to support a child born out of wedlock. Thus in argument to the court the father's attorney characterized the case as "not a domestic relations, husband and wife situation, where a father has a duty to support his child who is dependent upon him not only to age 18 but beyond that age . . . [but] a fornication and bastardy case . . . ." Record at 23a. Ruth Anne's attorney, in his argument, complained that he had never received a copy of the father's petition, Record at 28a, 30a, but he never made clear his conception of the hearing.

Given these circumstances, I think considerations of fair notice to the father require that the hearing be regarded as incident to his having pleaded guilty to having neglected to support a child born out of wedlock. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

With this definition of the nature of the hearing, it follows that the lower court was without authority to enter the order it did. It equally follows, however, that nothing we have said today is in any way relevant to the question whether in another sort of proceeding the father might not be required to continue to contribute towards Ruth Anne's support. *See generally Commonwealth ex rel. Schulberg v.*

*Hirsch,* 236 Pa.Super. 179, 344 A.2d 530 (1975); *Commonwealth ex rel. Welsh v. Welsh,* 222 Pa.Super. 585, 296 A.2d 891 (1972).