**Lewis v. PennDOT**

566

*Donald Smith, assistant counsel-in-charge,* for PennDOT.
*Gary D.A. Lewis,* in propria persona.

HESS, *J.,* October 25, 1990 — In this case Gary Lewis, D.O., has appealed from a 30-day suspension of his driver's license. There is no dispute that a notice of suspension, dated August 21, 1990, was received by him and that the reason for the departmental action was a third accumulation of six points on Dr. Lewis' driver's record. The pertinent provision of the Motor Vehicle Code provides in part:

"(c) *Subsequent accumulation of six points —* When any person's record has been reduced below six points and for the third or subsequent time shows as many as six points, the department shall require the driver to attend a departmental hearing to determine whether the person's operating privilege shall be suspended for a period not to exceed 30 days." 75 Pa.C.S. §1538(c).

Dr. Lewis concedes that a hearing was indeed scheduled and that he appeared at the offices of the Department of Transportation for that purpose. According to his testimony, however, what happened at the hearing was rather curious. Dr. Lewis indi-

cated that the "hearing" consisted of a lengthy lecture by a member of the Department of Transportation on the pitfalls of speeding and the art of avoiding points on one's driver's record. This lecture contained a rather astonishing admonition to avoid interstate highways because they were notorious for "speed traps." The hearing ended with these words to Dr. Lewis: "Do you have any questions?"

At our hearing, Dr. Lewis made a number of arguments. First, he claims that he has "become entrapped in the point system" and should have been given a special points examination. He offers no legal authority for this proposition. Section 1538(c) does not, in any event, provide for an examination. Finally, we note that Dr. Lewis has already passed two driver's examinations, one in August 1977 and another on April 29, 1988. There is, thus, no merit to this contention.

Dr. Lewis' second point is that the Pennsylvania point system is:

"[I]nequitable . . . as it is presently written because it is based upon the fact that most drivers drive an average of 10,000 miles per year. Therefore, when drivers like myself drive between 30,000 and 40,000 miles per year, their chances of accumulating points is three times greater than what is considered the average driver in this Commonwealth and the United States."

We know of no authority, whatsoever, for this argument. To the contrary, the point could be made that one who drives three and four times more than the average should be that much more careful.

It is the appellant's final contention which we believe has merit. In it he essentially denies that he was given any opportunity to state factors in extenuation or mitigation. Whether the department, in the

final analysis, chooses to take cognizance of such factors is not for us to say. On the other hand, the right to a hearing prior to the suspension of a driver's license involves questions of constitutional dimension. Such matters were succinctly reviewed in *Bell v. Burson,* 402 U.S. 535, 29 L.Ed. 2d 90, 91 S.Ct. 1586 (1971).

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the 14th Amendment. *Sniadach v. Family Finance Corp,* 395 U.S. 337, 23 L.Ed.2d 349, 89 S.Ct. 1820 (1969); *Goldberg v. Kelly,* 397 U.S. 254, 25 L.Ed. 2d 287, 90 S.Ct. 1011 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' *Sherbert v. Verner,* 374 U.S. 398, 10 L.Ed. 2d 965, 83 S.Ct. 1790 (1963). . .

"The hearing required by the Due Process Clause must be 'meaningful,' *Armstrong v. Manzo,* 380 U.S. 545, 552, 14 L.Ed. 2d 62, 66, 85 S.Ct. 1187 (1965), and 'appropriate to the nature of the case.' *Mullane v. Central Hanover Bank & Trust Co., supra,* at 313, 94 L.Ed. at 872, 873. It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision whether licenses of the nature here involved shall be suspended does not meet this standard." *Id.* at 539, 29 L.Ed. 2d at 94.

While a lecture on speeding may be, for this particular appellant, "just what the doctor ordered," it is not a substitute for a hearing. Dr.

Lewis sought to make several points before us concerning the fact that the loss of his driver's license will constitute an extraordinary hardship. In addition, he contended that the nature of the various violations on his traffic record do not warrant suspension. These are not matters for us to determine and we note, moreover, that the imposition of a license suspension by the department, even in the face of hardship, will not afford a basis to show an abuse of discretion by the department in imposing the suspension. *Plant v. Commonwealth,* 62 Pa. Commw. 75, 434 A.2d 1334 (1981). At the same time, we have no way of knowing whether the department, having heard out the operator on these matters, would not in the proper exercise of discretion decide not to impose a suspension. *Wessels v. Commonwealth,* 39 Cumberland L.J. 357 (1989). We conclude this case in the same way as *Wessels, supra:*

"This leads less to a conclusion that the department abused its discretion at a hearing and more to a conclusion that there has been no hearing at all. This is at odds with section 1538(c) of the Motor Vehicle Code. Accordingly, we have no choice but to remand this matter to the department for the conduct of a hearing during which the petitioner should be given the opportunity to outline his individual circumstances. We acknowledge the principle that a hearing by the common pleas court, on an appeal from suspension of motor vehicle operator's license by the Department of Transportation, normally cures any procedural due process defect which might have been caused by the lack of an administrative hearing. *White v. Commonwealth,* 80 Pa. Commw. 159, 471 A.2d 149 (1984). Logic dictates, however, that this is not the case where the

discretion to suspend the license lies, in the first instance, with the Department of Transportation." *Id.* at 359.

## ORDER

And now, October 25, 1990, the appeal of Gary D.A. Lewis from the suspension of his driver's license is sustained and the matter remanded to the Pennsylvania Department of Transportation for proceedings consistent with our opinion filed this date.