IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Frank James Kapish, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | No. 87 C.D. 2025 |
| Bureau of Driver Licensing | : | Submitted: May 14, 2026 |


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE STELLA M. TSAI, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION BY
JUDGE COVEY                                    FILED:  June 8, 2026


Frank James Kapish (Licensee) appeals from the Montgomery County Common Pleas Court's (trial court) December 4, 2024 order (entered December 5, 2024) denying his appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) 12-month suspension of his driving privileges (Suspension) pursuant to Section 3804(e)(2)(i) of the Vehicle Code.[1]  Licensee presents one issue for this Court's review: whether the trial court erred by finding that a delay of more than 10 years in imposing a driver's license suspension did not violate Licensee's due process rights.  After review, this Court reverses.

On May 4, 2015, Licensee pled guilty to one count of Driving Under the Influence (DUI) in Northampton County, Virginia.  At his criminal hearing, Licensee was informed that the guilty plea would not impact his operating privileges

---

[1] 75 Pa.C.S. § 3804(e)(2)(i) (relating to 12-month operating suspension due to "an ungraded misdemeanor or misdemeanor of the second degree under this chapter").

in Pennsylvania. However, in June 2015, DOT notified him that it would impose the Suspension as a result of the DUI. Licensee timely filed an appeal in the trial court. Montgomery County Common Pleas' (Common Pleas)[2] Court Administration (Court Administration) scheduled a hearing for September 28, 2015, but it was continued. Due to a clerical error, the trial court dismissed Licensee's appeal and reinstated his Suspension. The trial court judge rescinded the order dismissing the appeal on October 13, 2015, and further ordered Court Administration to relist the matter for a hearing. Notwithstanding, no activity occurred on the docket until December 21, 2017, when the trial court's prothonotary (Prothonotary) issued a Notice to Terminate the appeal due to inactivity.

Licensee filed a Statement of Intent to Proceed on January 19, 2018. Again, no docket activity occurred. The Prothonotary issued another Notice to Terminate on March 31, 2021, due to docket inactivity. That same day, Licensee filed a Statement of Intent to Proceed. However, because no activity took place, the Prothonotary issued another Notice to Terminate on February 29, 2024. This time, Licensee did not file a Statement of Intent to Proceed. The trial court terminated the case on April 2, 2024. Licensee filed a Petition to Reinstate, which the trial court granted as unopposed on June 25, 2024. On August 14, 2024, Court Administration scheduled a hearing. On October 15, 2024, the trial court held a hearing. After the hearing, the trial court held the matter under advisement and ordered the parties to file post-hearing briefs.

In his post-hearing brief, Licensee argued that his suspension should be dismissed pursuant to *Department of Transportation, Bureau of Driver Licensing v. Middaugh*, 244 A.3d 426 (Pa. 2021). The trial court determined that *Middaugh* did

---

[2] This Court references Common Pleas herein to differentiate it from the trial court which heard the appeal.

not apply in this instance because that case concerned an initial order of suspension that DOT did not send to the licensee until years after the conviction. Here, DOT timely received the notice of conviction and timely mailed a notice of suspension to Licensee. Therefore, the trial court denied Licensee's appeal. Licensee appealed to this Court.[3] On January 3, 2025, the trial court ordered Licensee to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Licensee timely filed his Rule 1925(b) Statement. On February 18, 2025, the trial court filed its opinion pursuant to Rule 1925(a).

Licensee argues that the nearly 10-year delay between his underlying conviction and hearing on his license suspension appeal mandates sustaining the appeal. Licensee contends that the delay constitutes a due process violation. Licensee asserts that since he had no motor vehicle violations during the 10-year span, the nexus between the governmental interest and Licensee's driving no longer exists. Further, Licensee proclaims that a governmental agency caused the delay by failing to schedule this matter for a hearing for nearly 10 years. Licensee maintains that he detrimentally relied on being permitted to drive over those 10 years and changes in his life circumstances would prejudice him. Finally, Licensee declares that the governmental interest in suspending a license to protect society from dangerous driving should place the onus on the government to seek and obtain that suspension.

---

[3] This Court's "review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Chojnicki v. Dep't of Transp., Bureau of Driver Licensing*, 332 A.3d 883, 886 n.2 (Pa. Cmwlth. 2025) (quoting *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017)). "An abuse of discretion occurs where in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Tullytown Borough v. Armstrong*, 129 A.3d 619, 622 (Pa. Cmwlth. 2015) (quotation marks omitted).

DOT rejoins that it properly and timely imposed the one-year suspension of Licensee's operating privilege in accordance with Section 3804(e)(2)(i) of the Vehicle Code upon receiving the Commonwealth of Virginia's report of Licensee's DUI conviction that was substantially similar to a conviction for violating Section 3802(a)(2) of the Vehicle Code, 75 Pa.C.S. § 3802(a)(2).[4] DOT retorts that, as Licensee had been convicted previously in New Jersey of a DUI violation that was also substantially similar to a conviction of violating Section 3802(a)(2) of the Vehicle Code, Licensee was not eligible for the statutory suspension exception contained in Section 3804(e)(2)(iii) of the Vehicle Code.[5] DOT further counters that Licensee timely filed a statutory appeal of the Suspension in the trial court and, as the *moving party*, he was responsible for moving his appeal forward. DOT emphasizes that the Prothonotary filed Notices to Terminate the appeal twice. DOT claims that, both times, Licensee filed a Statement of Intent to Proceed; however, Licensee then did absolutely nothing thereafter to schedule a hearing. DOT asserts that it was only after the Prothonotary issued the third Notice to Terminate and, thereafter, terminated the matter, that Licensee finally took steps to have the trial court hear his appeal.

Initially, in *Bechtel v. Department of Transportation, Bureau of Driver Licensing*, 352 A.3d 1159 (Pa. Cmwlth. 2026), this Court explained:

> In *Middaugh*, the Pennsylvania Supreme Court held: "[A] license suspension which is unreasonably delayed through no fault of the driver[] can potentially result in a denial of due process." *Middaugh*, 244 A.3d at 437. The *Middaugh* Court reasoned:

---

[4] Pennsylvania and Virginia are members of the interstate Driver's License Compact, 75 Pa.C.S. §§ 1581-1586. Virginia reported the conviction to DOT.

[5] 75 Pa.C.S. § 3804(e)(2)(iii) (relating to suspensions when "the person has no prior offense").

[A]ppeals of license suspensions based on the staleness of the underlying conviction bear **some parallels to** litigation in which **other recognized, but non-fundamental, rights** are at stake - such as the right to engage in lawful employment at issue in *Ladd* [*v. Real Est*[.] *Comm*['*n*], 230 A.3d 1096 (Pa. 2020)]: as in *Ladd*, such appeals involve as-applied challenges to presumptively valid statutory provisions; the regulation under review affects the continued possession of an important, constitutionally-protected interest;[FN]11 and where the suspension is delayed for an extraordinary period of time, the staleness of the predicate conviction tends to diminish the connection between the suspension and the statute's objectives, particularly where there have been no Vehicle Code violations in the interim.

> [FN]11 *See Bell v. Burson*, 402 U.S. 535 . . . (1971) (noting that the ability to drive an automobile constitutes a protected interest whether the state refers to it as a right or a privilege); *see also id.* (recognizing that the continued possession of driving privileges may be essential to the pursuit of one's livelihood)[.]

*Middaugh*, 244 A.3d at 435-36 (emphasis added).

*Bechtel*, 352 A.3d at 1163-64.

The *Middaugh* Court cautioned:

[T]he "mere passage of time in and of itself" does not violate the driver's substantive rights. *McFee v. Dep't of Transp.*, 400 N.W.2d 578, 581 (Iowa 1987). The [*McFee* C]ourt continued that, to hold that a long delay alone is grounds for relief "would promote the dangerous driver's rights over those of the general public and would frustrate the legislature's strongly established goal of removing dangerous drivers from the highways." *Id*.

This precept, however, is subject to a limiting principle whereby **an extreme delay such as [10] or [12] years may be viewed as *per se* prejudicial**.

*Middaugh*, 244 A.3d at 438 (emphasis added).

5

Here, DOT timely received the operative conviction and timely notified Licensee of his Suspension. Licensee timely appealed therefrom. That Licensee appealed from the Suspension does not make the delay his fault. "When a person's operating privilege is suspended, he is given due process; he is afforded an appeal to the trial court[] pursuant to Section 1550(a) of the Vehicle Code, 75 Pa.C.S. § 1550(a). This is [] the process to which [l]icensees are entitled." *Smires v. O'Shell*, 126 A.3d 383, 391 (Pa. Cmwlth. 2015).

It follows that the time it took for the trial court to address Licensee's appeal should not be attributed to him. Nonetheless, the trial court held otherwise, reasoning:

> Here, there is no dispute that [Licensee] is the moving party and bears the burden to move the case along, even though a hearing wasn't scheduled. **According to [DOT's] brief**, **[Licensee] testified that he was hoping [DOT] would forget about the [S]uspension/appeal. This goes to [Licensee's] credibility and indicates he was always aware of his appeal but intentionally failed to act in the hopes that his [S]uspension [would] go away**. Accordingly, [Licensee's] argument lacks merit and this appeal should be dismissed.

Trial Ct. Op. at 6 (emphasis added).

However, the transcript does not support DOT's representation. Rather, Licensee testified:

> Q Anything else you would like to say to His Honor?
>
> A The last thing I would like to just address is to what the prosecutor, I guess said[,] the [DOT] attorney said, is that it was under my thought as to what -- that I had no reason to get this -- to expedite this trial.
>
> My opinion of it was . . . - and I think [my attorney] would agree, that [DOT was] gathering information for this trial; that [it] couldn't get a hold of anybody that was down in

6

Virginia. I didn't know if you had to bring witnesses or so forth to --

THE [TRIAL] COURT: You didn't know there was an [i]nterstate [Driver's License] Compact?

THE WITNESS: I did not know there was an [i]nterstate [Driver's License] Compact at the time. Otherwise, I wouldn't have taken the deal when somebody [] told me I wouldn't have issues here.

THE [TRIAL] COURT: Did you feel that you had to, once [Common Pleas] vacated [the April 2, 2024] order and asked Court Administration to reinstate the appeal, did you ever reach out to [your attorney] or any other attorney or do it yourself, call Court Admin[istration], hey, wait a minute, it's 2016, 2017 has gone by. When are you going to do what [Common Pleas] ordered you to do?

Did you ever do that?

THE WITNESS: I truly didn't understand the whole process as to how this all plays out. I think [my attorney] can testify, I've asked him a thousand questions.

THE [TRIAL] COURT: Well, he's not a witness. He's your attorney.

THE WITNESS: No, I know. So, no, I honestly thought the ball was in the prosecutor's court to bring this to trial to have all their ducks in a --

THE [TRIAL] COURT: When you say prosecutor, you mean [DOT]?

THE WITNESS: Yes. I'm sorry.

THE [TRIAL] COURT: Did you also think that Court Admin[istration], who [Common Pleas] ordered to reinstate [the appeal], that [Court Administration] should have done it? And because [it] didn't, you just -- I won't say skated, but you had a supersedeas suspension [sic], that [DOT would] hold off on the [S]uspension all those nine years - that's what [DOT is] going to argue. Hey, you got the benefit of a . . . -- supersedeas. You didn't get [the Suspension] implemented because of what [Court

7

Administration] did. [DOT] is going to say you got grace, not prejudice.

Do you understand that's what [DOT is] going to argue?

THE WITNESS: I understand [DOT's] argument.

THE [TRIAL] COURT: It's really not a question. It's a statement.

THE WITNESS: No. I understand.

Reproduced Record at 32a-34a. The above testimony does not support the trial court's conclusion that Licensee "intentionally failed to act in the hopes that his suspension w[ould] go away." Trial Ct. Op. at 6.

DOT relies on *Department of Transportation, Bureau of Driver Licensing v. Gombocz*, 909 A.2d 798 (Pa. 2006), to support its position that "[DOT] is not responsible for moving the case forward unless circumstances exist making it reasonable to shift that burden to [DOT]." *Id*. at 802. DOT further argues that because *Middaugh* did not overrule *Gombocz*, *Gombocz* is still good law. However, the *Middaugh* Court modified the analysis of driver license suspension delays. First, it instituted the four-part test to determine whether a lengthy delay mandates sustaining an appeal. *See Middaugh*, 244 A.3d at 433-38. Second, the *Middaugh* Court recognized that a delay caused by a governmental agency other than DOT can require sustaining an appeal where an inordinate delay occurred. *See id*. at 439. Importantly, at the time *Gombocz* was decided, only a delay caused by DOT warranted sustaining an appeal. *See Gombocz*, 909 A.2d at 801 (citing *Terraciano v. Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 236 (Pa. 2000)). However, even before *Middaugh* was decided, the courts no longer required a *DOT-created delay* to sustain an appeal. Finally, unlike the lower court in *Gombocz* (as evidenced by the record and discussed below), Montgomery County relies on a court-driven system, thereby making Court Administration responsible for

8

scheduling Licensee's appeal hearing. In addition, Section 1550 of the Vehicle Code, entitled judicial review, establishes: "(c) Proceedings of court.-- **The [trial] court shall set the matter for hearing** upon 60 days' written notice to [DOT] and determine whether: . . . the [licensee's] operating privilege should be suspended[.]" 75 Pa.C.S. § 1550 (emphasis added).

Indeed, this Court's review of the trial court's docket entries reveals that Licensee filed his appeal on July 7, 2015. That same day, Common Pleas issued a notice scheduling a hearing for September 28, 2015. *See* Original Record (O.R.) at 13.[6] However, no hearing was held,[7] and the next docket entry shows that Common Pleas denied the appeal and reinstated Licensee's Suspension. *See* O.R. at 16. On October 13, 2015, Common Pleas vacated its previous order and **directed Court Administration to relist the matter**. *See* O.R. at 17. Court Administration did not relist the case; rather, according to the next docket entry (December 21, 2017), the Prothonotary issued a Notice to Terminate, which stated, in relevant part:

> [T]he [trial court] intends to terminate this case without further notice because the docket shows no activity in the case for at least two years. **You may stop the [trial] court from terminating the case by filing a Statement of Intention to Proceed**. The Statement of Intention to Proceed should be filed with the Prothonotary of the [trial c]ourt at COUNTY OF MONTGOMERY, OFFICE OF THE PROTHONOTARY, COURT HOUSE, NORRISTOWN, PA 19404-0311, on or before 1/20/2018.

O.R. at 18 (emphasis added). On January 19, 2018, **Licensee filed his Statement of Intent to Proceed**. *See* O.R. at 19.

---

[6] Because the Original Record pages are not numbered, this Court references electronic pagination herein.

[7] Apparently a continuance was granted; however, said continuance does not appear on the docket or in the Original Record.

Notwithstanding Licensee's filing, Court Administration still did not list his appeal for a hearing. Rather, the next docket entry reflects that, on March 31, 2021, the Prothonotary issued a second Notice to Terminate, proclaiming:

> [T]he [trial court] intends to terminate this case without further notice because the docket shows no activity in the case for at least two years. **You may stop the [trial] court from terminating the case by filing a Statement of Intention to Proceed**. The Statement of Intention to Proceed should be filed with the Prothonotary of the Court at COUNTY OF MONTGOMERY, OFFICE OF THE PROTHONOTARY, COURT HOUSE, NORRISTOWN, PA 19404-0311, on or before 4/30/2021.

O.R. at 23 (emphasis added). That same day, **Licensee filed his Statement of Intent to Proceed**. *See* O.R. at 26.

Notwithstanding Licensee filing his Statement of Intent to Proceed, Court Administration still did not list the matter for a hearing. Rather, the next docket entry shows that, on February 29, 2024, the Prothonotary issued a third Notice to Terminate, declaring:

> [T]he [trial court] intends to terminate this case without further notice because the docket shows no activity in the case for at least two years. You may stop the [trial] court from terminating the case by filing a Statement of Intention to Proceed. The Statement of Intention to Proceed should be filed with the Prothonotary of the Court at COUNTY OF MONTGOMERY, OFFICE OF THE PROTHONOTARY, COURT HOUSE, NORRISTOWN, PA 19404-0311, on or before 3/30/2024.

O.R. at 27. This time Licensee did not file a Statement of Intent to Proceed and, on April 2, 2024, the Prothonotary terminated the matter for "failure to prosecute." O.R. at 30. On May 10, 2024, **Licensee filed a Petition to Reinstate**. On June 24, 2024, **the trial court** issued an order reinstating the matter and **directing Court Administration to schedule a hearing**. *See* O.R. at 40.

This Court observes that Licensee's failure to timely file a Statement of Intent to Proceed before March 30, 2024, in response to the third Notice to Terminate, is the first time he was required to take action but did not do so. Nevertheless, by the time the Prothonotary issued the Notice to Terminate on February 29, 2024, 9½ years had passed due to Court Administration's failure to list the matter for a hearing.

Ultimately, the trial court held a hearing on October 15, 2024, over 10 years after Licensee filed his appeal. Even subtracting the time attributable to Licensee (February 29, 2024 Notice to Terminate to May 10, 2024 order reinstating the appeal), it took approximately 10 years for the trial court to hear Licensee's appeal, and another 2 months before the trial court denied the appeal and reinstated his Suspension. "[A]n extreme delay such as [10] or [12] years may be viewed as *per se* prejudicial." *Middaugh*, 244 A.3d at 438.

DOT contends: "It was only after a third Notice to Terminate was filed and granted, that [Licensee] finally took steps to have his appeal heard by the trial court." DOT Br. at 7. However, after the Prothonotary terminated the matter, Licensee filed a Petition to Reinstate, after which the trial court again directed Court Administration to list it for hearing, which it finally did. Where the trial court each and every time ordered *Court Administration* to list the appeal for a hearing, Licensee was not required to do anything more to advance his case. *See Koller v. Dep't of Transp., Bureau of Driver Licensing*, 682 A.2d 82, 84 n.3 (Pa. Cmwlth. 1996) ("[T]he moving party in a statutory appeal has nothing more to do to move the case forward once [he] has perfected [his] appeal other than wait for the trial court to schedule the matter."); *see also McCormick v. Dunkard Valley Joint Mun. Auth.*, 218 A.3d 528, 533 (Pa. Cmwlth. 2019). Yet, without any support, in its opinion, the trial court declared: "[Licensee] failed to request the matter be relisted." Trial Ct. Op. at 5.

This Court agrees with Licensee that the nearly 10-year delay between his underlying DUI conviction and the hearing on his Suspension appeal violated his due process rights. Moreover, it is uncontested that Licensee had no motor vehicle violations during that time; thus, the nexus between the governmental interest and Licensee's driving no longer exists. Further, Court Administration, a governmental agency, caused the delay by failing to carry out the trial court's order to schedule this matter for a hearing for nearly 10 years. Finally, imposing the Suspension over 10 years after Licensee's conviction would be per se prejudicial to him. Accordingly, this Court concludes that the nearly 10-year delay between Licensee's underlying DUI conviction and the trial court's hearing on his Suspension appeal mandates sustaining Licensee's appeal.

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank James Kapish,               :
           Appellant           :
                                     :
           v.                   :
                                     :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :    No. 87 C.D. 2025
Bureau of Driver Licensing        :

## O R D E R

AND NOW, this 8th day of June, 2026, the Montgomery County Common Pleas Court's December 4, 2024 order (entered December 5, 2024) is reversed.

_____
ANNE E. COVEY, Judge