616 A.2d 181

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Nolan D. BENNER, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1992.

Decided Oct. 9, 1992.

132

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, for appellant.

Michael E. Brunnabend, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals an Order of the Lehigh County Court of Common Pleas (trial court) reversing a decision by the Department to suspend the driving privileges of Nolan D. Benner (Benner) indefinitely.

The facts which give rise to Benner's suspension occurred on January 31, 1974. Benner, a member of the International Brotherhood of Teamsters, was involved in a nationwide strike of independent truck drivers. On that night, Benner and a group of five other striking truck drivers set out to engage in rock throwing at non-striking drivers passing under an overpass on U.S. Route 22. While Benner claimed to be asleep in the back seat of a parked car owned and operated by a fellow striker, one member of the group standing outside the car threw an 18 pound rock at a traveling truck operated by Ronald Hengst. The rock smashed through Hengst's windshield, apparently striking him. Hengst's truck proceeded to travel nearly 2 more miles before it then left the road and crashed, killing Hengst.

Following the incident, criminal charges were brought in Federal Court against Benner and the five other strikers. Following a trial, Benner was acquitted of all charges. The Administrator of Hengst's estate then brought a civil action against Benner and the five others in the Berks County Court of Common Pleas in December of 1974. Service of process upon Benner was made pursuant to Pa.R.C.P. 2079(a) with the service of a copy on the Secretary of State of the Commonwealth. One default judgment was entered against Benner on January 18, 1979, and another was entered on November 16, 1981, at which time Benner received personal service as evidenced by a sheriff's return of service. After 15 years of convoluted litigation concerning damages, Hengst's estate was awarded damages against all six men in the amount of $225,-

000.00 which was entered on October 24, 1989. This judgment remains unsatisfied.

On January 31, 1990, pursuant to Section 1772 of Subchapter G of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1772,[1] the Department notified Benner that his driving privileges were being suspended indefinitely until the judgment was satisfied. The pertinent provisions of the MVFRL provide in relevant part:

(a) Whenever any person fails within 60 days to satisfy any judgment *arising from a motor vehicle accident,* the judgment creditor may forward to the department a certified copy of the judgment.

.    .    .    .    .

(a) The department, upon receipt of a certified copy of a judgment, shall suspend the operating privilege of each person against whom the judgment was rendered except as otherwise provided in this section. . . .

.    .    .    .    .

(c) Any person whose operating privilege has been suspended, or is about to be suspended or become subject to suspension, under this chapter, shall be relieved from the effort of judgment under this chapter *if the person files evidence satisfactory to the department that financial responsibility was in force and effect at the time of the accident resulting in the judgement and is or should be available for the satisfaction of the judgement.*

75 Pa.C.S. §§ 1771(a) and 1772(a) and (c). (Emphasis added.)

Section 1773 of the MVFRL provides that the suspension shall remain in effect "until every judgment is stayed, satisfied in full or to the extent provided in this subchapter, and until the person furnishes proof of financial responsibility as required." 75 Pa.C.S. § 1773.

1. Prior to the enactment of the MVFRL, a similar provision was provided at 75 Pa.C.S. § 1413 and then 75 Pa.C.S. § 1742(a), until *repealed* by the Act of February 12, 1984, P.L. 26, § 3, which enacted the MVFRL.

■ Benner appealed the Department's decision to the trial court which reversed. The trial court held that the judgment did not "arise from a motor vehicle accident" as that term is used in the MVFRL. The trial court held that because the incident involved the intentional acts of pedestrians and because Benner was neither the owner nor operator of the vehicles involved, the suspension was unauthorized as beyond the scope contemplated by the General Assembly. The Department now appeals.[2]

The Department contends that the suspension of Benner's driving privileges was proper because the unsatisfied judgment arose out of a motor vehicle accident as that term is commonly defined and understood. The Department argues that the trial court committed an error of law by finding that Benner must be the owner or operator of a vehicle involved in the accident. Moreover, the Department argues that Benner failed to present acceptable evidence of automobile insurance which would entitle him to the relief provided by Section 1772(c).

The purpose behind the enactment of Section 1772 was to both promote the financial responsibility of drivers and aid in the collection of debts against *"negligent "* owners and drivers. *Department of Transportation, Bureau of Traffic Safety v. Granito,* 70 Pa.Commonwealth Ct. 123, 125, 452 A.2d 889, 890 (1982); *Department of Transportation, Bureau of Traffic Safety v. Rodgers,* 20 Pa.Commonwealth Ct. 393, 398, 341 A.2d 917, 919 (1975). (Emphasis added.) In *Rodgers,* we stated that "the purpose of Section [1772] is to require those *persons who use the public highways* to be financially responsible to those who suffer injury in their persons or property by virtue of *such use." Rodgers,* 20 Pa.Commonwealth Ct. at 399, 341 A.2d at 919. (Emphasis added.)

**2.** Our scope of review in a motor vehicle license suspension case is limited to determining whether the findings of fact are supported by substantial evidence, whether errors of law have been committed, and whether the trial court's decision demonstrates a manifest abuse of discretion. *Hewitt v. Commonwealth of Pennsylvania,* 116 Pa.Commonwealth Ct. 413, 541 A.2d 1183 (1988), *petition for allowance of appeal denied,* 520 Pa. 620, 554 A.2d 511 (1989).

In *Camacho v. Nationwide Mutual Insurance Company,*
314 Pa.Superior Ct. 21, 460 A.2d 353 (1983), *aff'd per curiam,*
504 Pa. 351, 473 A.2d 1017 (1984), the Superior Court held that
the definition of "motor vehicle accident victim" as used under
Section 1009.102 of the Pennsylvania No–Fault Motor Vehicle
Insurance Act (Act),[3] the predecessor to the MVFRL, did not
include persons injured by intentional torts only incidentally
involving a motor vehicle. Camacho had sued his insurance
company to collect no-fault benefits as a result of the inten-
tional act of an unknown person who threw a "Molotov cock-
tail" type explosive in the car he was operating, causing him
severe injuries.

The Superior Court denied Camacho's claim, holding that he
was not the type of "motor vehicle accident victim" covered by
the no-fault provisions of the Act. The Court refused to
extend the coverage of the Act for "an intentional tort which
has no connection with a motor vehicle accident other than
that the injured party was operating a motor vehicle at the
time of its commission. The term 'Motor Vehicle Accident' is
one of common parlance in today's society and the coverage of
the Act is limited to motor vehicle accidents while *maintain-
ing or using the same." Id.* at 24, 460 A.2d at 354. (Empha-
sis added.)

In the present case, the judgment resulting from the
tragic death of Ronald Hengst did not arise from a motor
vehicle accident as that term is used under the relevant
provisions of the MVFRL. The actions of those against whom
the judgment was rendered were intentional and did not
involve the use of an automobile owned or operated by Ben-
ner. Moreover, because the purpose of Section 1772 was to
promote financial responsibility by those persons who use the
highways of this Commonwealth, Benner should not be subject

---

**3.** Act of July 19, 1974, P.L. 489, *as amended,* 40 P.S. § 1009.101 *et seq.,*
which was *repealed* and replaced by the MVFRL. This section provided
that "it is the declared policy of the General Assembly to establish at
reasonable cost to the purchaser of insurance a statewide system of
prompt and adequate basic loss benefits for *motor vehicle accident
victims* and the survivors of deceased victims." 40 P.S. § 1009.102(b).
(Emphasis added.)

to a suspension of his driving privileges under Section 1772 an intentional act for which his automobile insurance, if any, would most likely not cover.

Furthermore, although automobile insurance coverage may not have been applicable, Benner attempted to present evidence to show that he was covered under an automobile insurance plan at the time of the incident which, pursuant to Section 1772(c), would preclude the suspension of his driving privileges. Benner testified that while at the time of the incident in January 1974, he was covered under an automobile insurance policy issued by Continental Insurance Company and written by Alfred Newhard, Sr. for his new 1974 Mark IV Lincoln Continental, he no longer has the policy or related materials in his possession. (28a–31a).

Benner also presented the testimony of Mr. Alfred Newhard, Jr., his present insurance agent and son of the agent who supposedly wrote the policy in effect at the time of the incident. Newhard testified that he is President of Lehigh Underwriters Agency and had worked for the agency his father ran during the 1970's. Newhard testified that he believed his father had insured Benner from the time he was 16 years old. (25a). Newhard also testified that his office records show policies for Benner back to 1983, but that his records do not go back any further because of the office policy that all records are destroyed after 7 years from the date a policy was in force. (24a–26a). Newhard stated that because the old records have been destroyed, there is no other way to determine if Benner was insured on that date in 1974. (26a).

This testimony, while not supported by documentary evidence, indicates that Benner was probably covered by an automobile policy at the time of the incident in 1974. The Department contends, however, that this does not amount to acceptable proof of financial responsibility as provided under the Department's regulations at 67 Pa.Code § 219.6.[4] Benner argues that the doctrine of laches should apply and preclude

4. This section provides that the only acceptable proof of financial responsibility is a financial responsibility I.D. card, a declaration sheet, a valid binder, or an application for insurance to Pennsylvania Automobile Insurance Plan. 67 Pa.Code § 219.6.

the Department from denying that insurance coverage did not exist.

■ The doctrine of laches can be applied against the Commonwealth, and a factual determination of whether it applies can be made on a case-by-case basis. *See Shah v. State Board of Medicine,* 139 Pa.Commonwealth Ct. 94, 589 A.2d 783, *petition for allowance of appeal denied,* 528 Pa. 646, 600 A.2d 197 (1991). While the evidence presented may not be satisfactory under the Department's regulations, given that Benner was asked to provide proof of insurance nearly 17 years after the incident took place when all pertinent records had been destroyed under normal insurance company procedures, we find that the Department is estopped under the doctrine of laches from arguing that Benner has failed to show proof of financial responsibility as provided under Section 1772(c) so as to relieve him of the suspension of his driving privileges.

Accordingly, we will affirm the Order of the trial court.

## ORDER

AND NOW, this 9th day of October, 1992, the Order of the Lehigh County Court of Common Pleas dated September 19, 1991, is affirmed.