**Jason G. SMITH**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2005.

Decided Dec. 14, 2005.

Publication Ordered Feb. 14, 2006.

Terrance M. Edwards, Asst. Counsel, Harrisburg, for appellant.

---

**17.** (*See, e.g.,* Appellant's Brief at 14–15, 22).

Keith J. Williams, Doylestown, for appellee.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY SENIOR Judge McCLOSKEY.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Bucks County (trial court), sustaining the appeal of Jason G. Smith (Licensee) and rescinding the indefinite suspension of Licensee's operating privilege imposed by DOT in conformity with the requirements of Section 1772(a) of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1772(a) (relating to non-payment of judgments). We now reverse.

The underlying facts of this case are not in dispute. On January 25, 1999, Licensee, then a minor seventeen years of age, illegally obtained and consumed an entire six-pack of beer and proceeded to drive a vehicle registered to his late grandmother through a glass and metal entryway and into a concrete wall surrounding the gymnasium inside the Central Bucks High School. Licensee survived the crash and later indicated under oath that he intended the crash as a means of suicide. *See* R.R. at 105a. At the time of the crash, Licensee was covered as an insured under his parents' automobile insurance policy, which was issued by State Farm Mutual Automobile Insurance Company (State Farm).

The high school was insured at the time of the crash under a policy issued to the Central Bucks School District by Utica Mutual Insurance Company (Utica). Licensee's crash resulted in damages to the high school totaling $61,370.38, for which

Utica indemnified the School District. Utica, as a subrogee of the School District, thereafter filed a civil complaint against Licensee, his father and his grandparents seeking to recover the $61,370.38 on the basis of negligence and negligent entrustment.

At the same time, State Farm filed a complaint for declaratory relief seeking a declaration that it has no obligation to defend or indemnify Licensee or his father with respect to civil case initiated by Utica. More specifically, in this complaint, State Farm noted that Licensee had stated under oath that he crashed the automobile into the school as a means of committing suicide, which State Farm described as an intentional act on the part of Licensee and not an accident. State Farm indicated that the automobile insurance policy issued to Licensee's parents only covered bodily injury and property damage resulting from an "accident." State Farm then noted that an intentional tort is not an accident and it is not covered under Licensee's parents' policy.

State Farm was successful in its complaint and the trial court granted declaratory relief in its favor. Utica was also ultimately successful with respect to its civil complaint, obtaining a judgment against Licensee in the amount of $61,370.38, said judgment being entered on May 23, 2003. On November 23, 2004, Utica forwarded Form DL–201, entitled Certification of Motor Vehicle Judgment, to DOT, detailing the $61,370.38 judgment it had obtained against Licensee. By letter dated December 17, 2004, DOT notified Licensee that his operating privilege was being suspended under Section 1772 of the MVFRL until he satisfies the Utica judgment. Section 1771(a) of the MVFRL, 75 Pa.C.S. § 1771(a), provides that whenever any person fails to satisfy any judgment "arising from a motor vehicle accident"

within sixty days, the judgment creditor may forward a certified copy of the judgment to DOT. Section 1772(a), in turn, provides that upon receipt of this certified copy of judgment, DOT "shall suspend the operating privilege of each person against whom the judgment was rendered...."

Licensee filed an appeal with the trial court alleging that he never received notice of the judgment. A de novo hearing was scheduled and held before the trial court on April 13, 2005. Neither party presented any testimony at this hearing. Instead, the hearing consisted of oral argument and the presentation of certain exhibits. Specifically, DOT admitted into evidence, without objection, a certified packet of documents, including a copy of the notice sent to Licensee dated December 17, 2004, a copy of the Certification of Motor Vehicle Judgment submitted to DOT by Utica and a copy of Licensee's certified driving history. Licensee admitted into evidence, without objection, a copy of the complaint for declaratory relief filed by State Farm, which included the following exhibits: a copy of the automobile insurance policy issued to Licensee's parents; a copy of the original civil complaint filed by Utica; and a copy of the transcript of Licensee's statement under oath.

At the conclusion of the de novo hearing, the trial court indicated that it was sustaining Licensee's appeal on the basis of prior case law and Section 1772(c) of the MVFRL, 75 Pa.C.S. § 1772(c). This Section of the MVFRL relieves a person from the effect of the filing of a certified copy of a judgment if said person "files evidence satisfactory to [DOT] that financial responsibility was in force and effect at the time of the accident resulting in the judgment and is or should be available for the satisfaction of the judgment." By order of the same date, the trial court did indeed sustain Licensee's appeal and rescind the indefinite suspension imposed by DOT.

DOT thereafter filed a notice of appeal with the trial court as well as a statement of matters complained of on appeal. The trial court then issued an opinion in support of its order essentially indicating that the incident underlying Licensee's suspension did not arise from a motor vehicle accident, but instead arose from an intentional act. As such, the trial court concluded that Licensee's operating privilege was not subject to suspension under Sections 1771(a) and 1772(a) of the MVFRL. Alternatively, the trial court indicated that Licensee would be subject to the exception provided in Section 1772(c).

On appeal to this Court,[1] DOT argues that the trial court erred as a matter of law in concluding that the incident underlying Licensee's suspension did not arise from a motor vehicle "accident," as that term is used in Section 1771(a) of the MVFRL. We agree.

As noted above, Section 1771(a) of the MVFRL addresses the reporting of nonpayment of judgments to DOT, providing as follows:

> GENERAL RULE.—Whenever any person fails within 60 days to satisfy any judgment arising from a motor vehicle accident, the judgment creditor may forward to the department a certified copy of the judgment.

75 Pa.C.S. § 1771(a). Section 1772(a) of the MVFRL addresses the effect of such report of non-payment, providing as follows:

---

1. Our scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996).

GENERAL RULE.—The department, upon receipt of a certified copy of a judgment, shall suspend the operating privilege of each person against whom the judgment was rendered except as otherwise provided in this section and in section 1775 (relating to installment payment of judgments).

75 Pa.C.S. § 1772(a). As noted above, Section 1772(c) of the MVFRL establishes an exception to such a suspension, providing, in pertinent part, as follows:

FINANCIAL RESPONSIBILITY IN EFFECT AT TIME OF ACCIDENT.— Any person whose operating privilege has been suspended, or is about to be suspended or become subject to suspension, under this chapter shall be relieved from the effect of the judgment as prescribed in this chapter if the person files evidence satisfactory to the department that financial responsibility was in force and effect at the time of the accident resulting in the judgment and is or should be available for the satisfaction of the judgment.

75 Pa.C.S. § 1772(c).

The term "motor vehicle accident" is not defined in the MVFRL. Licensee avers that said term should be defined under the general principles of insurance law, which excludes intentional acts from the definition of an "accident."[2] More specifically, in situations involving intentional acts, our Superior Court has held that automobile insurers are not liable for damages, nor are they required to defend an insured. *See, e.g., Franklin Insurance Company v. Roberts,* 859 A.2d 492 (Pa.Super.2004); *State Farm Mutual Automobile Insurance Company v. Martin,* 442 Pa.Super. 442,

660 A.2d 66 (1995), *petition for allowance of appeal denied,* 544 Pa. 676, 678 A.2d 366 (1996).

However, in the present case, DOT argues that we must look beyond the parameters of general insurance law and focus on the General Assembly's intent in enacting the MVFRL. DOT further argues that the trial court erred in limiting its definition of "accident" to the former, suggesting that the General Assembly intended the phrase "arising from a motor vehicle accident" in Section 1771(a) of the MVFRL to have a broader meaning. We agree with DOT in this regard.

We have previously noted that the purpose behind the enactment of Section 1772 of the MVFRL was to both promote the financial responsibility of drivers and aid in the collection of debts against negligent owners and drivers. *See Department of Transportation, Bureau of Driver Licensing v. Benner,* 151 Pa.Cmwlth. 131, 616 A.2d 181 (1992); *Department of Transportation, Bureau of Traffic Safety v. Granito,* 70 Pa.Cmwlth. 123, 452 A.2d 889 (1982). Furthermore, we have indicated that the purpose of Section 1772 was to "require those persons who use the public highways to be financially responsible to those who suffer injury in their persons or property by virtue of such use." *Department of Transportation, Bureau of Traffic Safety v. Rodgers,* 20 Pa.Cmwlth. 393, 341 A.2d 917, 919 (1975).[3]

In applying the "accident" definition garnered from general insurance law, thereby excluding intentional acts, the trial court relied upon our earlier decision in *Benner.* However, the facts of *Benner* are

---

2. DOT concedes that the present situation would not meet the definition of an "accident" under the general principles of insurance law.

3. We also noted in *Rodgers* that the "legislative purpose of attempting to more readily provide a source of compensation to motor vehicle accident victims is a legitimate state interest." *Rodgers,* 341 A.2d at 919.

easily distinguishable from the facts of the present case. In *Benner*, Benner was a striking truck driver who, along with fellow striking drivers, threw an eighteen pound rock off an overpass and through the windshield of a truck driven by a non-striking driver. This driver subsequently crashed and died as a result of this incident. His estate later brought a civil action against the striking drivers, including Benner, and was eventually awarded damages totaling $225,000.00. The estate then obtained a judgment against the striking drivers and proceeded to notify DOT.

Pursuant to the aforementioned sections of the MVFRL, DOT notified Benner that his driving privileges were being suspended. Benner appealed and the lower court reversed the suspension, concluding that the judgment did not arise from a motor vehicle accident. DOT appealed to this Court and we affirmed the lower court's reversal. In so doing, we noted that "the actions of those against whom the judgment was rendered were intentional and did not involve the use of an automobile owned or operated by Benner." *Benner*, 616 A.2d at 184.[4] To the contrary, the judgment in the present case clearly arose from Licensee's use and operation of a motor vehicle, albeit in a highly emotional state, which resulted in property damage at his local high school. Moreover, our conclusion here serves to support the purpose underlying Section 1772, i.e., to promote financial responsibility against the driver of a motor vehicle who causes injury to persons or property.

The trial court also relied upon our recent decision in *Paluske v. Department of Transportation, Bureau of Driver Licensing*, 875 A.2d 1214 (Pa.Cmwlth.2005), in support of a more restricted definition of "accident." However, we believe that our prior decision in *Paluske* actually supports the result we reach in the present case. In *Paluske*, Paluske's unoccupied car slid down his driveway during a rainstorm and struck and damaged another vehicle parked in front of his house. The owner of this other vehicle subsequently obtained a judgment against Paluske. DOT notified Paluske of a suspension of his operating privileges under Section 1772(a). Paluske appealed and a lower court reversed the suspension, concluding that the underlying judgment did not result from a motor vehicle accident as intended by Section 1771(a).

DOT appealed to this Court and we reversed the decision of the lower court. In rendering our decision, we noted that the term "motor vehicle" certainly would include a car. In addition, based on Paluske's own testimony that his car struck and damaged another car, we concluded that "it was both an error of law and a manifest abuse of discretion for the trial court to find that DOT failed to establish that the judgment resulted from a 'motor vehicle accident' under section 1771 of the MVFRL." *Paluske*, 875 A.2d at 1217. Later, we reiterated that "the damage which resulted in the judgment against Paluske was caused by the collision of Paluske's car with another car." *Id.* Hence, our conclusions in *Paluske* actually support the use of a broader definition of the term "accident."[5]

**4.** We stressed in *Benner* that the purpose of Section 1772 of the MVFRL was to promote financial responsibility by those persons who use the highways of this Commonwealth and that Benner should not be subject to a suspension of his driving privileges under this Section for an intentional act unrelated to his operation of a motor vehicle.

**5.** As to the trial court's alternative conclusion that Licensee would be subject to the exception found at Section 1772(c) of the MVFRL, we agree with DOT that this conclusion is also in error. The Section 1772(c) exception is only available where the licensee provides satisfactory evidence that "financial responsibility was in force and effect at the time of the

Accordingly, the order of the trial court is reversed and the indefinite suspension imposed by DOT is reinstated.[6]

### ORDER

AND NOW, this 14th day of December, 2005, the order of the Court of Common Pleas of Bucks County is reversed. The indefinite suspension of the operating privilege of Jason G. Smith imposed by the Department of Transportation, Bureau of Driver Licensing is hereby reinstated.

accident ... **and** is or should be available for the satisfaction of the judgment." There is no dispute that Licensee was covered by his parent's automobile insurance policy issued by State Farm. However, it is equally undisputed that State Farm was not liable for the damages caused by Licensee in this accident.

6. We note that Licensee need not satisfy the entire judgment before he may seek a restoration of his operating privilege. Pursuant to Section 1774(a)(3) of the MVFRL, 75 Pa.C.S. § 1774(a)(3), Licensee need only pay $5,000.00 of the judgment to have such judgment deemed satisfied. Alternatively, under Section 1775 of the MVFRL, 75 Pa.C.S. § 1775, Licensee may enter into an agreement with the judgment creditor and the court in which the judgment is entered to make regular installment payments to said creditor. Licensee may thereafter seek a restoration of his operating privilege.